480 S.E.2d 538

**PUBLIC CITIZEN, INC., Plaintiff Below, Appellant**

v.

**FIRST NATIONAL BANK IN FAIRMONT, Defendant Below, Appellee.**

**No. 23282.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Dec. 5, 1996.

---

332

Ross Maruka, Fairmont, John J. Beins, Gavett and Datt, P.C., Rockville, Maryland, for Appellant.

Philip C. Petty, Rose, Padden & Petty, L.C., Fairmont, for Appellee.

1. The plaintiff is a non-profit membership organization founded by Ralph Nader and located in Washington, D.C.

2. Since February 28, 1994, First National Bank in Fairmont has been owned by and does business as Wesbanco Bank.

3. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of

CLECKLEY, Justice.

The plaintiff below and appellant herein, Public Citizen, Inc.,[1] appeals from a final decision of the Circuit Court of Marion County in favor of the defendant below and appellee herein, the First National Bank in Fairmont[2] (the bank). The plaintiff assigns two separate errors: (1) The circuit court committed error in holding the defendant acted in accordance with reasonable commercial standards applicable to the business of the bank, and (2) the circuit court erred in finding the plaintiff was negligent and that its negligence barred its recovery in this action. For reasons stated below, we reverse the decision of the circuit court.[3]

I.

FACTUAL AND PROCEDURAL BACKGROUND

Adhering to the familiar praxis, we recite the pertinent facts in the light most consistent with the circuit court's factual findings. Jim Kampanos was the administrator for the plaintiff, Public Citizen, Inc., from April, 1989, to November, 1990. Mr. Kampanos's responsibilities included handling all investments for Public Citizen, including its accounts with Tucker Anthony, Inc., a Washington, D.C., brokerage firm. Between July and September of 1989, Mr. Kampanos perpetrated an embezzlement scheme whereby he deposited a total of $26,807.00 from the plaintiff's Tucker Anthony account into his own personal checking account at the bank.

Specifically, on July 7, 1989, Mr. Kampanos requested a Tucker Anthony representative to withdraw $12,225.00 from the plaintiff's investment account and send it to his attention at Public Citizen. As requested, Tucker Anthony issued a check for $12,-225.00 payable to the order of "Public Citizen, Attn Jim Kampanos." Mr. Kampanos

Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

endorsed the check, "For deposit only, 12–29931, Jim Kampanos," and on July 31, 1989, he presented the check for deposit at the bank. A teller at the bank accepted the check for deposit into Mr. Kampanos's personal account number 12–29931. On August 22, 1989, Mr. Kampanos again requested Tucker Anthony to send funds from the plaintiff's investment account, this time in the amount of $14,582.00. Tucker Anthony again supplied Mr. Kampanos with a check made out to the order of "Public Citizen, Inc., Attn Jim Kampanos" for the requested amount (on each check, the "Attn Jim Kampanos" was directly below the name "Public Citizen, Inc."). Mr. Kampanos endorsed the second check, "For deposit only, 12–29931, Jim S. Kampanos, Public Citizen, Inc." and on September 5, 1989, he deposited it to his personal checking account at the bank.

In November, 1990, the plaintiff's auditor, after concluding an audit of the 1989 books, discovered Mr. Kampanos had embezzled funds from the plaintiff.[4] Apparently, the auditor detected only the check for $14,582.00 and failed to notice that the second check for $12,225.00 had been deposited to Mr. Kampanos's account. In May, 1992, the plaintiff demanded the return of the proceeds of the check for $14,582.00, which demand was refused by the bank. On October 3, 1992, Public Citizen filed suit in the Circuit Court of Marion County asserting a cause of action for breach of warranty under the Uniform Commercial Code. On February 14, 1994, the bank informed the plaintiff of the $12,225.00 check which had been drawn on the plaintiff's Tucker Anthony account and deposited in Mr. Kampanos's account. In March, 1994, the plaintiff demanded that the bank return the proceeds of this second check, and upon the defendant's refusal, on March 31, 1994, the plaintiff amended its complaint to seek additional damages for this check as well.[5]

On November 14, 1994, following a bench trial, the circuit court ruled in favor of the defendant, finding the defendant had acted in accordance with reasonable commercial standards applicable to the business of the bank; that the checks, as drawn, were, at least, ambiguous, and, therefore, the checks were payable in the alternative and could be negotiated by Public Citizen or Jim Kampanos; that the plaintiff was negligent in failing to exercise reasonable control and/or supervision of its employee, Jim Kampanos, in failing to review in any timely manner the statements of the account with Tucker Anthony, and in failing to promptly notify the bank when it first became aware of the breach by one of its employees and its potential claim against the bank; and that the plaintiff's damages were incurred by and through its own negligence, as opposed to any negligence or wrongdoing on the part of the bank. It is from this ruling that the plaintiff appeals.

## II.

## DISCUSSION

On appeal to this Court, the plaintiff presents three grounds for reversal. First, the plaintiff challenges the circuit court's retroactive application of the 1993 revisions to the West Virginia Uniform Commercial Code. Second, the plaintiff contends the circuit court erred in finding the defendant's conduct was commercially reasonable with respect to the checks. Third, the plaintiff argues the circuit court erred by finding its damages were incurred by its own negligence. Following a review of the record, we find (a) the circuit court improperly gave retroactive consideration to the aforesaid 1993 revisions; (b) the defendant did not act in accordance with commercially reasonable standards as a matter of law; and (c) it is unnecessary to address the issue of the plaintiff's negligence. After setting forth the applicable standard of review, we first turn to the retroactive application of the 1993 revisions. We then shift to the issue of the

---

4. The deposits to Mr. Kampanos's account at the bank were part of a larger scheme in which Mr. Kampanos embezzled $96,510.51 from the plaintiff. Only the two checks totaling $26,807.00 and deposited to Mr. Kampanos's account at the bank are at issue in this case.

5. The plaintiff notified the Office of the United States Attorney for the District of Columbia, and Mr. Kampanos subsequently pleaded guilty to a charge of bank fraud.

commercial reasonableness of the bank's conduct and, finally, to the negligence of the plaintiff.

## A.

### Standard of Review

■■■ In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. A circuit court's finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Board of Educ. v. Wirt*, 192 W.Va. 568, 579 n. 14, 453 S.E.2d 402, 413 n. 14 (1994), *quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). However, we exercise complete and independent review over the circuit court's interpretation and conclusions of law. *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995).

## B.

### Analysis

### 1. Uniform Commercial Code: Applicability of 1993 Revisions

■■■ Unless varied by an agreement between them, the legal relationship between the parties is governed by the Uniform Commercial Code, as adopted in Chapter 46 of the West Virginia Code. The Legislature substantially amended Articles 3 and 4 of the West Virginia Uniform Commercial Code in 1993 in order to conform to the changes to the U.C.C. promulgated in 1990 by the Permanent Editorial Board of the Uniform Commercial Code. When a pending case implicates a state statute enacted after the events that form the basis of the suit, "the court's first task is to determine whether [the West

Virginia Legislature] has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229, 261–62 (1994). Thus, we begin our analysis with an examination of the law regarding retroactivity of legislative acts.

■■■ The plaintiff contends the circuit court erred in applying the new amendments retroactively. While noting the underlying transactions in this case occurred in 1989, the defendant argues that the rights and responsibilities of the parties in this case should be governed by the 1993 amendments to the Code. Indeed, it appears the circuit court did apply the revised Code to the facts in this case. Although the circuit court did not specifically state that it was using the post–1993 version of the Code, its conclusion that the checks were payable in the alternative because the order language was ambiguous appears to be drawn directly from W. Va. Code § 46–3–110(d) (1993),[6] which does not have an equivalent in the older version of Article 3. Nevertheless, the circuit court's interpretation of a statute, including whether the statute is to be applied retroactively, is a question of law reviewed by us *de novo.*

■■■ The defendant argues the changes were not substantive and, therefore, retroactive application poses no substantial harm to the parties. We disagree. Under West Virginia law, a statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application. *See Mildred L.M. v. John O.F.*, 192 W.Va. 345, 351–352 n. 10, 452 S.E.2d 436, 442–443 n. 10 (1994), *citing Landgraf v. USI Film Products*, 511 U.S. at 244, 114 S.Ct. at 1483, 128 L.Ed.2d at 229; *see also* Norman J. Singer, *Statutes and Statutory Construction* § 41.04 at 349–50 (5th ed.1993). To be specific, this means that, unless expressly stated otherwise by the statute, such a statute will not apply to pending cases or cases filed

---

6. W. Va.Code § 46–3–110(d) (1993) states, in pertinent part: "If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively."

subsequently based upon facts completed before the statute's effective date. *See generally State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 738–739, 474 S.E.2d 906, 918–919 (1996). In contrast, remedial and procedural provisions are applied normally to pending cases despite the absence of a clear statement of legislative intent to do so.[7] In these situations, the reliance interest that is the foundation of the interpretive principle limiting retroactive application is not engaged. But even here the procedural/substantive distinction is not talismanic. The test of the interpretive principle laid down by the United States Supreme Court in *Landgraf* is unitary. It is whether the "the new provision attaches new legal consequences to events completed before its enactment." 511 U.S. at 270, 114 S.Ct. at 1499, 128 L.Ed.2d at 255. If a new procedural or remedial provision would, if applied in a pending case, attach a new legal consequence to a completed event, then it will not be applied in that case unless the Legislature has made clear its intention that it shall apply.

The changes made by the 1993 amendments cannot be considered as procedural or inconsequential. As the plaintiff argues, "[t]he 1993 Amendments dramatically changed the law with respect to the problem of the ambiguous payees. Under the 1993 amendments, an ambiguity as to whether joint payees were payees in the alternative, or not, allows *either* payee to indorse and negotiate a check without the other payee's endorsement." To the contrary, the law prior to 1993, as codified in W. Va.Code, § 46–3–116, provided that unless the instrument is made payable to two or more payees, in the alternative, it "is payable to all of them and may be negotiated, discharged or enforced *only* by all of them." (Emphasis added). Thus, we find that "the new provision attaches new legal consequences to events completed before its enactment."

Because application of the new amendments to this case would be retroactive, the next step is to discern whether the Legislature intended the new amendments to apply retroactively. This inquiry examines a principle deeply rooted in our jurisprudence that absent some clear signal from the Legislature, a statute will not apply retroactively. In unbroken precedent, this Court has stated "[a] statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." Syl. Pt. 3, *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980). *See also* Syl. Pt. 3, *State ex rel. Manchin v. Lively,* 170 W.Va. 672, 295 S.E.2d 912 (1982); *State ex rel. Glauser v. Board of Educ.,* 173 W.Va. 481, 318 S.E.2d 424 (1984); W. Va.Code § 2–2–10(bb) (1989). Against this background, we look to the new amendments to see if the Legislature indicated an intent for them to apply to cases such as the one *sub judice.* No such ignoble intention appears in the statute and, as the plaintiff points out, its absence is determinative under West Virginia law. Because the amendments, if given retroactive effect, would attach a new legal consequence to the transaction that occurred before the amendments came into existence, this legislative silence, coupled with the presumption against retroactivity, leads us to hold that the new amendments do not apply to this case. Therefore, the U.C.C., as it existed prior to the 1993 amendments, is applicable to determine the parties' respective rights concerning the 1989 transactions which form the basis for this action. The circuit court's conclusion that "[t]he checks made payable to the order of 'Public Citizen, Inc. Attn: Jim Kampanos' are, at least, ambiguous. Therefore, they are payable in the alternative and could be negotiated by Public Citizen, Inc., or Jim Kampanos" represents a misapplication of the law and is accordingly set aside. Our reasoning is more fully set forth below.

---

7. We have provided that the general rule of prospective application may be relaxed for procedural or remedial statutes, *Myers v. Morgantown Health Care Corp.,* 189 W.Va. 647, 649–50, 434 S.E.2d 7, 9–10 (1993); *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 311, 270 S.E.2d 178, 183 (1980); *see also Farish v. Courion Indus., Inc.,* 754 F.2d 1111, 1114–15 (4th Cir. 1985), and in cases where an amended statute incorporates common law that existed before the amendment to the statute. *Myers,* 189 W.Va. at 650, 434 S.E.2d at 10.

### 2. *Commercial Reasonableness of the Defendant Bank's Conduct*

In its most crucial conclusions of law, the circuit court found the defendant "acted in good faith, and in accordance with reasonable commercial standards applicable to the business of the bank." On the other hand, the circuit court found the plaintiff was negligent in exercising reasonable control and supervision over its employee, failing in a timely manner to review its statements of account with the defendant, and failing to promptly notify the bank when "it first became aware of the breach by one of its employees and its potential claim against the bank." Thus, the defendant argues the plaintiff is barred by its own negligence from pursuing its claim.[8]

W. Va.Code § 46–3–406 (1963), states:

"Any person who by his negligence substantially contributes to a material alteration of the instrument or the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

■ W. Va.Code § 46–3–406 sets up an estoppel and counter-estoppel situation. A person is barred or precluded from asserting that a signature on an instrument was unauthorized, if by his or her negligence he or she has substantially contributed to the unauthorized signature. However, in order to use this defense, a bank must establish that it acted according to the reasonable commercial standards of the banking business when it allowed the corporate checks to be deposited in an individual account. *In re Lou Levy & Sons Fashions, Inc.*, 988 F.2d 311, 314 (2nd Cir.1993); *Am. Mach. Tool Distribs. Ass'n v. Nat'l Permanent Fed. Sav. & Loan Ass'n,*

464 A.2d 907, 911–12 (1983). Official Comment 6 to W. Va.Code § 46–3–406 sheds light on what is meant by "reasonable commercial standards": "[A]ny bank which takes or pays an altered check which ordinary banking standards would require it to refuse cannot take advantage of the estoppel." Thus, in order to determine whether the bank may assert the affirmative defense of negligence on the part of the plaintiff, we must consider whether ordinary banking standards would require the defendant to refuse to deposit the checks in question to Mr. Kampanos's personal checking account. The defendant contends it was commercially reasonable to accept the checks for deposit because Jim Kampanos had authority to cash them for two reasons: (1) They were payable in the alternative to either Public Citizen or Jim Kampanos, and (2) Jim Kampanos was clothed with authority to act on behalf of Public Citizen with respect to the Tucker Anthony account.

■ The checks were made out to "Public Citizen, Inc. Attn Jim Kampanos." The defendant argues that the language of the checks is ambiguous and, therefore, they were payable in the alternative. The defendant erroneously relies on the 1993 amendment to W. Va.Code § 46–3–110(d) (1993) which states, in part: "If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively." As we stated, because the transactions forming the basis for this case occurred in 1989, we must analyze the claim under the statute as it was before the 1993 revisions.

■ Under the pre–1993 U.C.C., it is only when the check clearly identifies alternative payees that either payee may endorse and negotiate the check.[9] *See Midwest In-*

---

8. The alleged negligence included that the employer (1) clothed the employee with authority to negotiate the employer's checks, (2) allowed the employee to have responsibility with respect to the checks, (3) failed to check the drawer's (Tucker Anthony) monthly statements sent to the employer, (4) allowed the embezzlement to continue for over a year, and (5) failed to notify the defendant of the embezzlement until eighteen months after the employer discovered it.

9. W. Va.Code § 46–3–116 (1963) states:
"An instrument payable to the order of two or more persons
"(a) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;
"(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

*dus. Funding v. First Nat'l Bank,* 973 F.2d 534, 537 (7th Cir.1992) (when a check names two payees, they are joint payees unless it is expressly stated that they are payees in the alternative); *Peoples Nat'l Bank v. Am. Fidelity Fire Ins. Co.,* 39 Md.App. 614, 386 A.2d 1254 (1978) (check which was made payable to two payees without including the words "and" or "or" between the payees' names was made payable to both and could be negotiated only with the endorsements of both payees); *C.H. Sanders Const. Co. v. Bankers Trust Co.,* 123 A.D.2d 251, 506 N.Y.S.2d 58 (1986) (when a check is ambiguous as to whether payees are joint or alternative, it will be construed as payable jointly in order to give each payee the maximum protection by requiring the endorsement of both payees to negotiate the paper).

The plaintiff argues that because this case is governed by the pre–1993 statute, the circuit court's finding of ambiguity supports the position that the checks were not payable in the alternative. We agree. We find that under the U.C.C. as it existed prior to the 1993 revision, the checks were payable jointly and, therefore, required the signatures of both parties in order to be negotiated.

▮The defendant next argues that it acted in accordance with commercially reasonable standards when it accepted the checks because Mr. Kampanos had been clothed with authority to act on behalf of Public Citizen, Inc. with respect to the Tucker Anthony account. In support of this contention, the defendant introduced into evidence letters written between Jim Kampanos and a representative of Tucker Anthony regarding Public Citizen's investment accounts with Tucker Anthony. However, these letters could not have influenced the bank's actions with respect to the checks because the defendant was not aware of these letters until it received them as a product of discovery during litigation. The defendant also cites the fact that Public Citizen named Jim Kampanos as treasurer in December, 1989. That argument also fails because the transactions took place between July and September

ber, 1989, well before Mr. Kampanos was appointed treasurer.

▮ The circuit court found the bank employees believed Mr. Kampanos had authority to deposit the checks in his account. However, subjective belief is not enough. The defendant was obligated to take steps to inquire as to Mr. Kampanos's authority. One who deals with an individual purporting to be an agent of another is bound at his own peril to know the authority of such alleged agency. *John W. Lohr Funeral Home, Inc. v. Hess & Eisenhardt Co.,* 152 W.Va. 723, 731, 166 S.E.2d 141, 146 (1969).

William Goodrich, corporate representative for the defendant, testified in a deposition that the defendant depended on the words "Attn Jim Kampanos" to conclude that Mr. Kampanos had authority to endorse and deposit the checks; that the bank did not have anything on file indicating Jim Kampanos and Public Citizen, Inc. were one and the same; and that bank employees did not know who Public Citizen, Inc. was at the time the checks were accepted for deposit. Rebecca Corder, the teller who accepted the $14,-582.00 check endorsed by Jim Kampanos with both his name and "Public Citizen, Inc.," testified that she did not inquire as to Jim Kampanos's authority to deposit the check into his personal account because he was a known customer. Ms. Corder also testified that she would not have accepted the other check (for $12,225.00) because it did not have an endorsement for Public Citizen, Inc.[10] Thus, according to representatives for the defendant, the defendant merely assumed Mr. Kampanos had authority to deposit a corporate check to his personal account and did not take any steps to ascertain his authority. In addition, Ms. Corder indicated that it was against proper banking policy to accept the check which did not contain an endorsement for Public Citizen.

▮ "Several courts have held as a matter of law that it is commercially unreasonable for a bank to accept for deposit in an individual account a check made payable to a corporation, without first ascertaining, or at least inquiring as to, the authority of the

---

**10.** Another teller, who apparently was not deposed, accepted the check made out for $12,-225.00.

depositor/endorser. [Citations omitted.] Other courts have taken judicial notice that a bank is required to at least inquire as to the reason and authority for depositing a check with a corporate payee into a third party's account." *Am. Mach. Tool Distribs. Ass'n,* 464 A.2d at 913–14 (allowing employer's administrative director to deposit checks in his own personal account where checks were payable to employer was not in accord with reasonable commercial standards). *See also In re Lou Levy & Sons,* 988 F.2d at 311; *Nat'l Bank of Georgia v. Refrigerated Transport Co.,* 147 Ga.App. 240, 244, 248 S.E.2d 496, 500 (1978) (bank is not relieved of duty to inquire even when depositor of check is customer of bank).

The checks deposited to Mr. Kampanos's account were not payable in the alternative. Mr. Kampanos did not have the authority to sign the checks on behalf of Public Citizen, Inc., nor did the defendant inquire as to his authority to do so. The defendant's representatives accepted for deposit into Mr. Kampanos's personal account corporate checks without inquiring as to Mr. Kampanos's authority to deposit the checks to his personal account. One of the checks held a forged corporate endorsement, and the other was missing the corporate endorsement. Therefore, the defendant conducted itself in a commercially unreasonable manner as a matter of law. Because the defendant has failed to prove that it dealt with the checks in a commercially reasonable manner, it is not entitled to the affirmative defense of negligence in W. Va.Code § 46–3–406. There-

fore, we need not determine whether the plaintiff was contributorily negligent, as any negligence by the plaintiff would be irrelevant.

### 3. Timeliness

■ Lastly, the circuit court found that notice and the demand by the plaintiff were untimely. To resolve this issue, we must first find the nature of the plaintiff's claim; *i.e.,* is the claim one of breach of warranty or conversion? In considering the breach of warranty claim, the question is whether a collecting bank's warranties on an instrument extend to the named payee. The warranties of a collecting bank are set forth in W. Va.Code § 46–4–207.[11] Subsection 1, on warranties of presentment, states the warranties extend from "each ... collecting bank ... to the payor bank or other payor who in good faith pays or accepts the item." Subsection 2, referring to transfer warranties, states they extend from "each ... collecting bank ... to [its] transferee and to any subsequent collecting bank who takes the item in good faith."

■ Because neither section contains mention of a payee, it appears the Legislature did not intend these warranties to extend to a payee and, indeed, that is how the statute has been interpreted by the authorities. "The payee of a check paid on a forged indorsement has no claim for breach of a warranty of good title as such warranty does not run back to the payee." 7 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 4–207:42 at 78 (3rd ed.1995).

11. The first two subsections of W. Va.Code § 46–4–207 (1963), define the warranties of a collecting bank on transfer or presentment of items:

"(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

"(a) he has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

"(b) he has no knowledge that the signature of the maker or drawer is unauthorized....

"(c) the item has not been materially altered....

"(2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his trans-

feree and to any subsequent collecting bank who takes the item in good faith that

"(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and

"(b) all signatures are genuine or authorized; and

"(c) the item has not been materially altered; and

"(d) no defense of any party is good against him; and

"(e) he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item. In addition each customer and collecting bank so transferring an item and receiving a settlement or other consideration engages that upon dishonor and any necessary notice of dishonor and protest he will take up the item."

"Neither section [4–3–417 nor 4–4–207] creates warranties which run expressly to a payee from a depositary bank. . . . [W]e are aware of no case holding that the *payee* may maintain an action against the depositary bank on the basis of either § 4–4–207 or § 4–3–417, and . . . we decline so to hold." *Nat'l Sur. Corp. v. Citizens State Bank,* 41 Colo. App. 580, 583, 593 P.2d 362, 365 (1978), *aff'd,* 199 Colo. 497, 612 P.2d 70 (1980). Because there is no warranty extending from the defendant as collecting bank to the plaintiff as payee, we find the plaintiff does not have a claim for breach of warranty under W. Va. Code § 46–4–207.

Despite the plaintiff's failure to state a claim for breach of warranty, we find it established a claim for conversion. W. Va.Code § 46–3–419 (1963), states: "(1) An instrument is converted when . . . (c) it is paid on a forged indorsement." In a conversion claim, an unauthorized endorsement receives the same treatment as a forgery. *Equitable Life Assurance Soc'y v. Okey,* 812 F.2d 906, 908 (4th Cir.1987). "A payment upon a missing indorsement is equivalent to a payment over a forged indorsement." *Peoples Nat'l Bank v. Am. Fidelity Fire Ins. Co.,* 39 Md.App. 614, 386 A.2d 1254, 1257 (1978).[12] Therefore, we will analyze this case as a claim for conversion.

The plaintiff did not make a demand on the defendant until eighteen months after it learned of the transfer of its funds to Mr. Kampanos's personal account and did not file a claim until twenty-three months after learning of the deposit. The defendant argues that under W. Va.Code § 46–4–207(4) (1963), the defendant, if liable, should be discharged to the extent of any loss caused by the plaintiff's delay in making the claim.[13] However, this argument also is irrelevant, as the plaintiff has no claim under W. Va.Code, 46–4–207. "UCC 4–207(4) expressly applies only to a claim for breach of warranty, and should not be applied to a claim for conversion." *Home Ins. Co. v. Mfrs. Hanover Trust Co.,* 203 A.D.2d 125, 126, 610 N.Y.S.2d 508, 509 (1994). Having found no merit in the defendant's contention, we find that the conclusions reached by the circuit court are inconsistent with the established law of this jurisdiction.

### III.

### CONCLUSION

Based on the foregoing, the decision of the Circuit Court of Marion County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RECHT, J., sitting by temporary assignment.

---

12. The conversion statute in the 1993 amendments to the Uniform Commercial Code (W.Va. Code § 46–3–420 (1993)) specifically state that the payee has no conversion action when the check was never delivered to the payee. Under the pre–1993 version, there was a split of authority as to whether a payee who never received the instrument is a proper plaintiff in a conversion action. 6A Hawkland Uniform Commercial Code Series § 3–420:04 at 541 n. 2 (1993). However, we need not reach this question, assuming the check was delivered to the plaintiff's mailbox.

13. W. Va.Code § 4–207(4) (1963) states: "Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim."