**STATE OF WEST VIRGINIA**

**Rodney L. Newbrough,**
**Plaintiff Below, Petitioner**

**FILED**

**March 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 18-0085** (Harrison County 15-C-254-1)

**Gregory A. Newbrough,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rodney L. Newbrough, by counsel Thomas W. Kupec, appeals the Circuit Court of Harrison County's January 4, 2018, "Order Following Trial by Court." Respondent Gregory A. Newbrough failed to submit a response before this Court.

This Court has considered petitioner's brief and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Because our decision in this matter is dictated by well-settled law, we conclude that this case satisfies the "limited circumstances" provision in Rule 21(d) of the Rules of Appellate Procedure for reversal and remand in a memorandum decision. As such, by this memorandum decision, we reverse and remand the circuit court's January 4, 2018, order.

According to the complaint filed in the circuit court, the parties are siblings whose mother, Joyce E. Newbrough, died testate in Harrison County. According to their mother's will, she devised her 1997 Dutch Empress mobile home to respondent, even though that mobile home was affixed to real estate owned by petitioner in Harrison County.[1] The complaint provides that in April of 2008, a dispute arose over the mobile home and Magistrate DeMarco, in the Magistrate Court of Harrison County, awarded possession of the mobile home to petitioner based upon respondent's representation that he did not want the mobile home so he was giving it to petitioner. The complaint also alleged that in another proceeding in the Family Court of Harrison County, also in 2008, respondent admitted relinquishing his interest in the mobile home to petitioner. Petitioner set forth in the complaint that at the time of Ms. Newbrough's death, a debt was owed on the mobile home to Greentree Services, LLC, which exceeded the value of the mobile home. According to petitioner, he had made all loan payments on the home, paid the taxes on the mobile home, made repairs to the mobile home, and had taken all action as the owner of the mobile home. Petitioner was in the process of selling the mobile home and was advised that he needed respondent to execute a document setting forth his disclaimer of any interest in the mobile home. However, petitioner claims that respondent failed and refused to execute such document or discuss the issue with petitioner. Petitioner alleged that because the debt on the mobile home exceeded the value of the mobile home, "it would cause irreparable

---

[1] Throughout the complaint, petitioner refers to the home as a "mobile home;" however, in his argument before this Court he refers to it as a "modular home." We will refer to it as a mobile home for purposes of this memorandum decision.

damage to [petitioner's] property, if it were to be removed from [petitioner's] real property at [that] point." In that complaint, petitioner requested that he be granted full ownership of the mobile home that was affixed to his real estate, that the circuit court find that respondent had abandoned any interest in that mobile home, and that petitioner be granted the legal right to sell it.

In respondent's pro se answer before the circuit court, he claimed that his mother "left me everything" because he cared for both his mother and father. He asserted that he made the "down payment" on the house and that his grandfather left the real property to Ms. Newbrough and petitioner. Further, he states that he "helped them with the house because [he] lived with them and took care of all of the [h]ouse payments." Respondent further claimed that he "had no help" from petitioner. While respondent's answer is difficult to follow, it appears that petitioner filed an action in the Magistrate Court of Harrison County seeking security to keep the peace, pursuant to West Virginia Code § 62-10-1, and seeking to gain sole possession of the mobile home. Respondent asserted that he did not give petitioner the mobile home but was told by the family court that he had to vacate the mobile home. He specifically stated in his answer before the circuit court that he did not give petitioner the home but that he "just didn't want to fight with him . . . [because he] didn't need the stress." According to the answer, when petitioner requested that respondent sign papers allowing petitioner to sell the home, respondent refused to do so and told petitioner that respondent would move back in if petitioner did not want the home because it was respondent's mobile home. Respondent contended, therein, that petitioner had already sold the mobile home and asserted a claim for half of the proceeds from that sale.

In response to requests for admissions, respondent admitted that he had not paid taxes on or made repairs to the mobile home, attributing his failure to do so on the 2008 protective order prohibiting respondent from entering the mobile home. He adamantly denied giving the mobile home to petitioner. Petitioner's exhibits below include the "Order of Possession/Removal: Wrongful Occupation of Residential Rental Property," entered by the Magistrate Court of Harrison County on April 5, 2008, ordering that petitioner have possession of the mobile home. It further ordered that respondent vacate the mobile home no later than June 4, 2008. In addition, petitioner proffered the "Family Court Order Denying Domestic Violence Protective Order and Terminating the Emergency Protective Order," entered on April 7, 2008, in which the family court stated the following: "Respondent agrees that [illegible but seems to refer to petitioner's wife] & her husband (his brother) may have possession of the [mobile] home they shared. The [c]ourt finds there to be no DV [domestic violence] credibly established." Notes that appear elsewhere on that order, which appear to have been written by the family court judge, urge the parties to refrain from any contact and order law enforcement to accompany respondent to the mobile home to retrieve his personal property, including furniture.

Also included in the record is the hearing transcript and DVD from the April 7, 2008, family court hearing before Judge M. Drew Crislip; that proceeding was a domestic violence proceeding involving petitioner's wife and respondent. According to that transcript, respondent stated that he "would rather take [his] belongings out of the house and if they want the house, they can have it. . . ." When the family court judge followed up, the following exchange took place:

Judge Crislip: You said they could have the home. That includes anything that's a fixture. Anything that's attached, you can't have.

Respondent: All's I want is my personal belongings. My (inaudible) that are brand new, my washer and dryer is brand new, the refrigerator is brand new. . . . [speaking to petitioner] You guys want it. I'm giving you the house. . . I wanna move. I wanna just go. I'm getting away from here. . . .

Judge Crislip: . . . You say you're giving them the home and I'm putting that in the order as a notation. . . .

After petitioner filed a complaint before the Circuit Court of Harrison County, seeking to obtain full, legal ownership of the mobile home, the matter proceeded to a non-jury trial. During the trial, respondent denied giving petitioner any mobile home and denied remembering that Judge Crislip asked him about giving the mobile home to petitioner and his wife. Respondent admitted that he had no recollection of a hearing before Magistrate DeMarco or the order requiring that he vacate the mobile home by June 4, 2008. When petitioner's counsel inquired as to how respondent could forget portions of the hearing before the family court judge, which petitioner's counsel read and/or paraphrased during questioning, respondent blamed his consumption of medication. At the conclusion of that trial, the circuit court asked the parties to submit proposed findings of fact and conclusions of law.

Following the trial before the circuit court, the court entered its order finding that petitioner failed to prove his claims of 1) detrimental reliance, 2) waiver, and 3) that the subject mobile home is a fixture on petitioner's real property by a preponderance of the evidence. According to the circuit court's order, "[s]cant documentary evidence was adduced, and no photographs, canceled checks, receipts, etc. were produced. The parties' credibility was also a significant issue." The circuit court specifically ordered that petitioner "shall recover **NOTHING**" from respondent in the underlying matter. Petitioner appeals from that January 4, 2018, order.

We have previously set forth the following standard of review for orders resulting from non-jury trials:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Public Citizen, Inc. v. First Nat. Bank of Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

On appeal, petitioner asserts the following six assignments of error:

1. The circuit court erred when it failed to find that the mobile home in question had been affixed to the real estate and was being used as a home with the intention of making the annexation of the real estate permanent.

2. The circuit court erred when it failed to find that respondent knew that he had the right to enforce his ownership interest in the mobile home and he voluntarily relinquished his right on at least three separate occasions in April of 2008.

3. The circuit court erred when it failed to find that when respondent made his statements in the magistrate and family court hearings in April of 2008 he knew, or reasonably should have expected, that the statements would be relied upon by petitioner and that petitioner reasonably relied upon the same to his detriment by making improvements and payments on the mobile home.

4. The circuit court erred when it failed to find that respondent could not now come back and change his mind concerning this mobile home after nine years to the disadvantage of petitioner.

5. The circuit court erred when it found that insufficient evidence was presented to find that the mobile home at issue located on petitioner's real property legally belongs to petitioner.

6. The circuit court erred when it failed to make any findings of fact or conclusions of law and by failing to find the undisputed facts and apply the applicable law.

Respondent failed to submit a timely response to this Court. Therefore, the Court entered an amended scheduling order on June 22, 2018, directing respondent to file a brief or summary response within five days of receipt of that order. The order also informed respondent that his failure to file a brief would result in the case being considered only upon the materials submitted by petitioner. To date, respondent has not submitted any response before this Court.

Rule 10(d) of the West Virginia Rules of Appellate Procedure provides, in relevant part, that

> [t]he respondent must file a brief in accordance with this subsection, or a summary response in accordance with subsection (e) of this Rule. . . If the respondent's brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the case.

In addition, Rule 10(e) permits a respondent to file a summary response, rather than a respondent's brief. That rule requires that summary response "contain an argument responsive to the assignments of error with appropriate citations to the record on appeal, exhibiting clearly the points of fact and law being presented and the authorities relied on . . . ."

The circuit court's "Order Following Trial by Court" contains only one substantive paragraph with very little to support its findings. For instance, the order states that the "parties' credibility was also a significant issue" without setting forth any details regarding the testimony. That comment by the circuit court is difficult to understand in light of the testimony and evidence presented to that court.

During the non-jury trial before the circuit court, petitioner's counsel asked respondent, under oath, about an order from the magistrate court requiring that respondent vacate the mobile home no later than June 4, 2008. Then the following exchange took place:

Q: And isn't that because you said, that you didn't want the house any more?

A: No, that's not why I said – I never said anything about me giving him my home. . .

***

Q: . . . I'm talking about the hearing that took place in front of Judge DeMarco in the Magistrate Court . . .

A: I really don't remember. I mean, I was on Prozac. My – all of my friends, I just had three people die. And, you know, I don't know. I can't remember what went on in DeMarco's office.

With regard to the hearing two days later in the family court, the following exchange took place between petitioner's counsel and respondent:

Q: Okay. And do you remember being asked by Judge Crislip, to you, you don't want the house any more?

A: No, I don't –

Q: Do you [remember] what your response was?

A: Do not remember him asking me anything like that.

Q: Here's what your response was according to the DVD or CD as you called it. I want the house, but if they're there, I don't want the house. I just want to get my personal belongings out. I've already got another place. Because it's actually – he gave it. The property is his. Now do you remember making that statement?

A: No, I don't.

Q: Was there any – any reason why that statement would come out if you didn't make it?

A: No, I didn't – I – like I said, I was – I was emotionally in a lot of problems at that time. I mean, it's hard to tell what I did say. I was on medication. I'm not going to lie about it.

Q: Okay. And then, do you remember [petitioner] saying that the house was ready to be – the mobile home is ready to be foreclosed upon. And you said, I just talked to them. And payments aren't being made. And I just – and then you said, I

5

just talked to them. Do you remember making those statements?

A: Yes, I do. And, yes, I stopped payment. Yes, I did because if they're going to live there, then they're going to pay the three hundred and fifty-one dollars ($351).

Respondent then denied making the statements contained in the transcript and supported by this Court's review of the video recording from that hearing. In addition, he admitted that he had not made any loan payments on the mobile home since April of 2008 or made any payment on the real or personal property taxes since 2008. When given the opportunity to speak on his own behalf after being questioned by petitioner's counsel, respondent did not do so.

When petitioner was questioned by his attorney during the trial, he testified that respondent "got the house" when their mother passed away but that respondent could not keep up with the payments because he was not working. Petitioner testified that he sold his residence and moved in, "[c]aught everything up. And been paying it ever since." Petitioner's exhibits introduced during the non-jury trial included "tax papers," which reportedly reflected the payment of taxes for the mobile home at issue situated on petitioner's real estate, "taxed as Class II, together." He confirmed that he had paid the taxes on the real estate and mobile home since April of 2008. Further, he testified that the mobile home had the wheels removed when it was placed on the real property in 1997, and the mobile home is on top of pillars installed on a cement foundation. In addition, according to petitioner there are three porches built onto the mobile home, which are all attached to both the mobile home and the ground. Petitioner also provided testimony about numerous repairs and improvements he had made to the mobile home since 2008, including a new roof, new carpet, and painting.

During the non-jury trial, petitioner presented argument regarding what petitioner's counsel referred to as three principles of law: attachment to petitioner's land, including the payment of taxes on the mobile home; waiver; and detrimental reliance. Respondent chose not to present any witnesses and declined the opportunity to present a closing statement. The circuit court did not set forth any findings of fact or conclusions of law on the record, instead entering its order that does not comply with the requirements of West Virginia Rule of Civil Procedure 52(a). As we found in *National Grange Mutual Insurance Company v. Wyoming County Insurance Agency, Inc.*, 156 W. Va. 521, 527, 195 S.E.2d 151, 155 (1973), the circuit court's finding regarding a lack of evidence "is not a finding of fact as required by Rule 52(a), but a comment on some of the evidence which we feel expresses an incorrect view of the evidence. The remaining parts of the court's opinion are conclusions of law."

Based upon respondent's failure to submit a response, which essentially acts as a consent to petitioner's arguments, and the circuit court's scant, unsupported findings, we reverse the circuit court's January 4, 2018, "Order Following Trial by Court." We hereby remand this matter to the circuit court with instructions to enter an order finding that the mobile home at issue is affixed to petitioner's real estate with the intention of making the annexation of the real estate permanent and petitioner is the owner of the home at issue, with the legal right to sell that home.

Reversed and remanded.

**ISSUED:** March 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison