## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**KERMIT WILEY, SR.,**
**Plaintiff Below, Petitioner**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-394**   (Cir. Ct. Mercer Cnty. Case No. CC-28-2024-C-42)

**SANDRA K. TRENT,**
**Defendant Below, Respondent**


### MEMORANDUM DECISION

Petitioner Kermit Wiley, Sr. appeals the bench trial order entered by the Circuit Court of Mercer County on August 30, 2024. In its order, the circuit court found that no enforceable contract existed between the parties for the sale of certain real property. Respondent Sandra K. Trent did not participate in this appeal.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the circuit court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For these reasons, the circuit court's decision is reversed.

At the heart of this case is whether a contract exists between the parties for the sale of real property located in Mercer County (the "Property"). Mr. Wiley contends that by handwritten agreement dated January 24, 2024 (the "Agreement"), Ms. Trent agreed to sell to him her Property for $60,000. The Agreement, which was prepared and signed by Ms. Trent, states: "January 24, 2024. Received 10,000.00 from Kermit Wiley for down payment on doublewide located at 131 Pansey Place. Balance remaining is $50,000.00. /s/ Sandra Trent." It is undisputed that at the time of the Agreement, Ms. Trent was the Property's sole owner and that she accepted Mr. Wiley's initial payment of $10,000.

Shortly thereafter, Mr. Wiley offered payment for the remaining balance of $50,000, which Ms. Trent refused to accept. Mr. Wiley discovered that after executing the Agreement and accepting the $10,000 down payment, Ms. Trent listed the Property with a realtor, accepted another buyer's offer to purchase the Property for $167,500, and executed

---

[1] Petitioner is represented by William S. Winfrey II, Esq.

a purchase agreement. Thereafter, Mr. Wiley filed a complaint in circuit court seeking specific performance of the Agreement.

During the bench trial, Ms. Trent testified that she drafted and signed the Agreement, and that the Agreement was the parties' contract for the sale of the Property. She also acknowledged acceptance and receipt of the $10,000. However, she raised several points to contest its validity. For example, she testified that she did not directly discuss the terms of the Agreement with Mr. Wiley, but rather, those discussions were held between Mr. Wiley and her then-husband, Mr. Trent,[2] and that she was in another room of her home while the matter was discussed. She also testified that it was her belief that the Agreement was intended to include contingency language which was to reflect that the $60,000 purchase price would be increased if the home appraised for $100,000 or more. However, Ms. Trent acknowledged that the contingency issue was never addressed with Mr. Wiley.

Mr. Wiley testified that he discussed purchasing the Property with Mr. Trent, and that Ms. Trent was not directly involved in those discussions. He further indicated that he believed that the $60,000 purchase price reflected a sale price reduction to account for the substantial sums of money which he had lent Mr. Trent in the past that still needed to be repaid. Mr. Wiley stated that he had planned to purchase the home and then sell it to recoup the purchase price and outstanding loans. Mr. Wiley agreed that the contingency issue was never addressed with him. Instead, he testified that Ms. Trent drafted and signed the Agreement, which was delivered to him by Mr. Trent, and that he tendered the $10,000 to Ms. Trent, which she accepted. He stated that these events all took place close in time to January 24, 2024.

In its bench trial order, the circuit court found that Ms. Trent acknowledged that she prepared and signed the Agreement, and that the document was a contract for the sale of the Property. The court found that the Agreement satisfied the statute of frauds pursuant to West Virginia Code § 36-1-3 (1923).[3] The court further determined that the Agreement satisfied the following elements of a contract: competent parties, legal-subject matter, and valuable consideration. However, the circuit court determined that there was no

---

[2] Mr. Trent was not called by either party as a witness at trial.

[3] West Virginia Code § 36-1-3 provides:

No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence.

enforceable contract because the evidence failed to establish the remaining element: a "meeting of the minds."[4]

On this issue, the circuit court placed emphasis on the fact that the parties did not directly negotiate the matter with each other, there was no evidence that Mr. Trent was acting as Ms. Trent's agent, and based upon the parties' trial testimony, they each clearly had different understandings of the Agreement. Specifically, the court found that Mr. Wiley believed that he was purchasing the property for $60,000 with a $10,000 down payment, and that the purchase price was discounted to reflect outstanding debts owed to him by Mr. Trent. With respect to Ms. Trent, the court determined that while she had authenticated the Agreement, she held a subjective belief that there was supposed to be a contingency clause in the Agreement regarding the sale price of the Property. The circuit court went on to find that after Ms. Trent was offered $167,500 for the home by another party, there was no evidence of a new negotiated price between the parties and, thus, the parties did not know the exact terms of the Agreement, rendering it unenforceable. The circuit court entered judgment in favor of Ms. Trent and this appeal followed.

Our standard of review for this case is as follows:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

Mr. Wiley raises several assignments of error on appeal, which all center on his all-encompassing contention that the circuit court erred when it determined that the Agreement was not an enforceable contract between the parties. Therefore, we combine and restate Mr. Wiley's assignments of error as that singular issue for the purposes of this appeal. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error

---

[4] *See* Syl. Pt. 5, *Virginia Exp. Coal Co. v. Rowland Land Co.*, 100 W. Va. 559, 131 S.E. 253 (1926) ("The fundamentals of a legal 'contract' are competent parties, legal subject–matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement.").

where they involve clearly related issues); *Perry v. Ravenscroft*, No. 24-ICA-134, 2024 WL 5002991, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (consolidating and restating petitioner's assignments of error on appeal). In other words, the issue on appeal is whether the circuit court erred in its determination that the Agreement was not a valid and enforceable agreement between the parties.

Upon review, we agree with Mr. Wiley that the Agreement is a valid and enforceable contract. For the reasons outlined below, we conclude that the circuit court's ruling was contrary to well-established principles of contract law and, as a result, constitutes reversible error.

"Generally, the existence of a contract is a question of fact." Syl. Pt. 4, in part, *Cook v. Heck's Inc.*, 176 W. Va. 368, 342 S.E.2d 453 (1986); *see Conley v. Johnson*, 213 W. Va. 251, 254, 580 S.E.2d 865, 868 (2003) ("As a general proposition, it is recognized that the questions of whether parties have reached a meeting of minds in an agreement situation and whether their undertakings have involved mutuality, are ordinarily ones of fact."). Here, we must determine whether the record supports the circuit court's determination that there was no meeting of the minds or mutuality of assent between the parties with respect to the Agreement. We conclude that it does not, and that the circuit court clearly erred in finding no contract existed.

On this issue, the Supreme Court of Appeals of West Virginia has stated:

It is elementary that mutuality of assent is an essential element of all contracts. *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.,* 158 W. Va. 935, 216 S.E.2d 234 (1975). In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied. *See Lacey v. Cardwell,* 216 Va. 212, 217 S.E.2d 835 (1975); *Charbonnages de France v. Smith,* 597 F.2d 406, 415–416 (4th Cir.1979).

*Ways v. Imation Enters. Corp.*, 214 W. Va. 305, 313, 589 S.E.2d 36, 44 (2003) (quoting *Bailey v. Sewell Coal Co.,* 190 W. Va. 138, 140–41, 437 S.E.2d 448, 450–51 (1993)).

We are also mindful that:

Thus, as a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent. . . . In the formation of contracts . . . it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words

4

rather than by the hidden, subjective or secret intention of the parties. . . .
Thus, it is true that as a general principle, the inquiry will focus not on the
question of whether the subjective minds of the parties have met, but on
whether their outward expressions of assent is sufficient to form a contract.

1 *Williston on Contracts* § 4:1 (4th ed. 2024); *see also Studeny v. Cabell Huntington Hosp.*,
No. 13-0363, 2013 WL 6152402, at *2 (W. Va. Nov. 22, 2013) (memorandum decision)
(recognizing that the existence of an offer and mutuality of assent in a contract are objective
determinations).

In this case, the record is replete with overt acts by the parties to establish a meeting
of the minds regarding the intent and terms of the Agreement. First, according to the record,
the Agreement is unambiguous. Next, it is undisputed that Ms. Trent prepared and signed
the Agreement, accepted Mr. Wiley's initial $10,000 payment, and that Mr. Wiley tendered
the remaining purchase price to Ms. Trent, which she refused to accept. While Ms. Trent
testified that the Agreement lacked a contingency clause, not only did she acknowledge
below that no one discussed the clause with Mr. Wiley, but more significantly, she prepared
and signed the Agreement. These outward expressions illustrate a manifest intent by the
parties to be bound by the terms of the Agreement as written and executed by Ms. Trent.
Under the plain terms of this Agreement, Ms. Trent agreed to sell the Property to Mr. Wiley
for $60,000. *See PITA, LLC v. Segal*, 249 W. Va. 26, 43, 894 S.E.2d 379, 396 (Ct. App.
2023) (citations omitted) ("Our jurisprudence has long recognized that parties have a duty
to read contracts before signing them."); *Conley*, at 254, 580 S.E.2d at 868 (stating that
under West Virginia law, a contract does not need to be signed by both parties to be
enforceable, and that only the signature of the party to be charged (the party being sued) is
required). Therefore, we conclude that the Agreement is a valid and enforceable contract.
As such, the circuit court's decision must be reversed.

Accordingly, we reverse the circuit court's August 30, 2024, bench trial order.

Reversed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White