**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**L.M.,**
**Plaintiff Below, Petitioner**

**v.)  No. 24-367** (Jefferson County CC-19-2023-S-AP-5)

**D.P.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

The petitioner herein and plaintiff below, L.M., appeals from an order entered on October 20, 2023, by the Circuit Court of Jefferson County upholding the personal safety order ("PSO") the magistrate court granted to the respondent herein and defendant below, D.P.[1] In response, D.P. contends that the circuit court did not err. Upon a review of the parties' briefs and the appendix record, we conclude that the circuit court did not err in upholding the PSO issued by the magistrate court and that disposition by memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

L.M. and D.P. are longtime neighbors whose relationship has become acrimonious due, in part, to L.M.'s contention that D.P. is trying to appropriate a portion of his property by adverse possession and D.P.'s contention that L.M. stares at and watches her while she is gardening in her yard.[2] Although the parties have lived next door to each other for more than fifteen years, their animosity manifested itself when D.P. claimed that L.M. began watching her while she was gardening in the portion of her yard that abuts L.M.'s property; as a result, D.P. built a wooden privacy fence a few feet parallel to the chain link fence that borders L.M.'s yard to block his view of her yard. D.P.'s privacy fence did not extend the full length of L.M.'s chain link fence, but it

---

[1] L.M. is represented by counsel Kevin D. Mills and Jacob W. Mills, and D.P. is represented by counsel Michael T. Logsdon II. We refer to the parties by their initials rather than by their full names because PSO cases are confidential. *See generally* W. Va. Code § 53-8-2.

[2] It appears that the parties' dispute as to the correct boundary line between their properties arose when an individual who lived in their neighborhood informed L.M. that his property boundary may actually extend into the area comprising a portion of D.P.'s yard. The parties have since obtained at least one survey of the property line but disagree regarding the interpretation of those results.

appears that the branches of a tree in D.P.'s yard obscured L.M.'s view of her yard where her privacy fence ended.

After D.P. installed her privacy fence, L.M. reported to law enforcement officials that he would be conducting a controlled burn on his property; L.M. testified that he regularly burns his garden plot to prepare it for the growing season, but he also used his flame weeder to eliminate weeds in the approximately three-foot-wide strip of yard between his chain link fence and D.P.'s privacy fence. L.M.'s burn activities prompted D.P. to also contact law enforcement officials because she was afraid that L.M. would burn her privacy fence, and she claimed that L.M. verbally threatened to burn down her fence, as well as her house with her, her husband, and their child inside. Thereafter, D.P. noticed scorch marks on her privacy fence.

A few months later, while D.P. and her family were on vacation, L.M. admitted to cutting branches off of a tree that was located inside of D.P.'s privacy fence. L.M. claimed that the offending branches were perpendicular to the tree and hanging into his yard, but photographs in the appendix record show, and the circuit court observed, that the branches at issue were instead parallel to L.M.'s fence. L.M. stated that he stayed within his fence to trim the tree, that he had pruned the tree in the past, and that the tree is actually on his property, not D.P.'s property. Upon returning home, D.P. noticed not only the newly-trimmed tree but also that L.M. had a now-unobstructed view of her backyard in the area previously occupied by the now-removed tree branches, and that L.M. had set up a table and a chair from which to watch her while she was in her yard.

To block L.M.'s view of her now-exposed portion of yard, D.P. installed nine metal posts— one just inside the end of her privacy fence and eight in a row next to it, extending the remaining length of L.M.'s chain link fence. D.P. covered the posts with a tarp to further obstruct L.M.'s view of her yard. L.M. averred that he attempted to remove the eight metal posts, believing them to be on his property and attempting to prevent D.P. from claiming ownership of that disputed portion of property by adverse possession; unable to remove the eight posts, L.M. instead bent each of them into a ninety-degree angle, allegedly to thwart any claim by D.P. to that strip of property.

D.P. filed a petition for a PSO against L.M. in the Magistrate Court of Jefferson County, which the court granted.[3] L.M. then appealed to the Circuit Court of Jefferson County, which conducted a bench trial and upheld the PSO granted by the magistrate court. In its October 20, 2023, order, the circuit court explained its ruling as follows:

> Conduct directed at another with the intent to cause the other person to fear for her personal safety is prohibited by W. Va. Code § 61-2-9a(a). Likewise, harassment, defined as "a willful course of conduct directed at a specific person . . . which would cause a reasonable person mental injury or emotional distress and

---

[3] L.M. alleges that he sought a PSO against D.P., but that the magistrate court denied his request because it had already issued a PSO to D.P.

which serves no legitimate or lawful purpose" is prohibited. W. Va. Code § 61-1-9a(h)(4).

Here, [L.M.] admittedly engaged in eight acts of destruction when he deliberately damaged [D.P.'s] stakes and defeated [D.P.'s] intent to restore her privacy by placement of her tarp. It is not justification for the destruction of another's personal property that one believes, rightly or wrongly, that such personal property is on one's land. Coupled with the scorch damages that he caused to [D.P.'s] privacy fence, it is reasonable that [D.P.], already upset by what she perceived as personally objectionable staring at her person, would have felt emotional distress at these repeated provocations.

(Footnote omitted). The court further encouraged the parties to pursue civil proceedings to resolve their boundary dispute. From this order, L.M. appeals to this Court.

We review a circuit court's order from a bench trial as follows:

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

A court may issue a PSO to protect the petitioning party

if the court finds by a preponderance of the evidence that:
(A)(i) The respondent has committed an act specified in subsection (a), section four of this article [W. Va. Code § 53-8-4(a)] against the petitioner; and
(ii) The petitioner has a reasonable apprehension of continued unwanted or unwelcome contacts by the respondent[.]

W. Va. Code § 53-8-7(a)(2)(A)(i-ii).

L.M. assigns error to the circuit court's conclusion that the record evidence supports a finding that he committed a requisite act specified in West Virginia Code § 53-8-4(a) to permit the issuance of a PSO to D.P. This statute provides, in pertinent part:

(a) *Underlying acts.* – A petitioner may seek relief under this article by filing with a magistrate court a petition that alleges the commission of any of the following acts against the petitioner by the respondent:
. . . .

3

(2) A violation of subsection (a), section nine-a, article two, chapter sixty-one of this code [W. Va. Code § 61-2-9a(a)]; or

(3) repeated credible threats of bodily injury when the person making the threats knows or has reason to know that the threats cause another person to reasonably fear for his or her safety.

W. Va. Code § 53-8-4(a)(2-3). The circuit court determined that L.M.'s conduct constituted a violation of West Virginia Code § 61-2-9a(a), which addresses the crime of "stalking":

(a) *Stalking*. – Any person who engages in a course of conduct directed at another person with the intent to cause the other person to fear for his or her personal safety, the safety of others, or suffer substantial emotional distress, or causes a third person to so act, is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or confined in jail for not more than six months, or both fined and confined.

*Id.* Accordingly, the circuit court upheld the PSO the magistrate court awarded to D.P. against L.M.

L.M. primarily argues that "stalking" under West Virginia Code § 61-2-9a(a) requires a finding that the offending party acted with intent and that the circuit court failed to find that L.M. acted with intent. While not using the precise word "intent," the circuit court characterized L.M.'s actions in bending D.P.'s metal stakes as "deliberately" done and noted that L.M. admitted to such conduct. "Deliberate" connotes an action "done . . . in a way that is . . . intended[.]" *Deliberate*, The Britannica Dictionary (Mar. 5, 2026), https://www.britannica.com/dictionary/deliberate; *accord Deliberate*, The Free Dictionary (Mar. 5, 2026), https://en.thefreedictionary.com/deliberate (defining "deliberate" as "intentional"). "Stalking" also requires that the intentional conduct "cause the other person to . . . suffer substantial emotional distress," W. Va. Code § 61-2-9a(a), which the circuit court found to have occurred as a result of L.M.'s conduct: "Coupled with the scorch damages that he caused to [D.P.'s] privacy fence, it is reasonable that [D.P.], already upset by what she perceived as personally objectionable staring at her person, would have felt emotional distress at these repeated provocations." The court additionally heard testimony by D.P. that L.M.'s actions caused her emotional distress, for which she sought medical treatment and was prescribed medication for anxiety. Accordingly, the circuit court properly determined that L.M.'s actions towards D.P. satisfied the statutory prerequisites for the issuance of a PSO.[4]

---

[4] L.M. further argues that the circuit court erred by failing to find that his actions in bending D.P.'s metal posts had a "legitimate and lawful purpose," as referenced in the definition of "[h]arasses" contained in West Virginia Code § 61-2-9a(h)(4). *See also* W. Va. Code § 61-2-9a(b) (defining crime of "harassment" using language similar to conduct referenced in W. Va. Code § 53-8-4(a)(3) to support issuance of PSO but also using term "harasses"). However, we need not reach this assignment of error because West Virginia Code § 53-8-4(a) employs the word "or" and is phrased in the disjunctive, thus requiring the commission of only one of the prohibited acts to support the issuance of a PSO. *See* W. Va. Code § 53-8-4(a)(2-3); *see also State v. Easton*, 203 W. Va. 631, 643, 510 S.E.2d 465, 477 (1998) ("We have customarily stated that where the

Therefore, we find no error in the circuit court's order upholding the PSO granted by the magistrate court to D.P. against L.M., and we affirm the October 20, 2023, order entered by the Circuit Court of Jefferson County.

Affirmed.

**ISSUED:** April 21, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." (internal quotations and citations omitted)). Having determined that the circuit court did not err in concluding that L.M.'s conduct constituted a violation of West Virginia Code § 61-2-9a(a), i.e., stalking, thereby satisfying the requirements of West Virginia Code § 53-8-4(a)(2) to uphold the PSO the magistrate court granted to D.P., it is not necessary to determine the existence of other grounds to support the PSO's issuance.