582 S.E.2d 802

**Michelle M. BETO, Plaintiff Below, Appellant,**

v.

**Daniel H. STEWART, M.D., Defendant Below, Appellee,**

and

**P. Gregory Haddad, Intervenor.**

No. 30631.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 2002.

Decided April 17, 2003.

Dissenting Opinion of Justice McGraw July 2, 2003.

Dissenting Opinion of Chief Justice Starcher July 10, 2003.

David J. Romano, Esq., Christine Jones Pacyna, Esq., Romano Law Office, Clarksburg, for Appellant.

Beth A. Raffle, Esq., Steptoe & Johnson PLLC, Morgantown, Ancil A. Ramey, Esq., Steptoe & Johnson PLLC, Charleston, for Appellee.

Rebecca A. Betts, Esq., Allen Guthrie & McHugh, Charleston, for Intervenor.

MAYNARD, Justice.

The appellant, Michele M. Beto, appeals the order of the Circuit Court of Harrison County which found no obstruction of the discovery process by the appellee, Dr. Daniel H. Stewart, or his attorney, P. Gregory Haddad, in the underlying medical malpractice action. Ms. Beto avers that Attorney Haddad attempted to conceal material evidence and argues the circuit court abused its discretion by concluding that no discovery obstruction occurred. She also believes the circuit court erred by deciding the collateral issue in an *in camera proceeding*. We find no abuse of the discovery process.

## I.

## FACTS

On February 11, 1998, Dr. Stewart surgically removed three perineal cysts from Ms. Beto's right groin area.[1] The surgery did not involve her left leg. Nonetheless, immediately following surgery, Ms. Beto's left lower leg and foot were numb. During her hospitalization, the condition in her left leg and foot did not improve. Ms. Beto's doctors determined that she was suffering from "left-sided sciatica neuropathy related to operative positioning in the lithotomy position." In

---

1. The surgery was performed at United Hospital Center in Clarksburg, West Virginia.

other words, she sustained a nerve injury which left her with a dropped left foot. After going through treatment at the Cleveland Clinic and physical therapy, Ms. Beto's condition improved. However, her left foot and leg are permanently impaired.

Ms. Beto sued United Hospital Center, Dr. Stewart, and the nurse anesthetist who participated in the surgery, alleging medical malpractice. The hospital and the nurse anesthetist settled with Ms. Beto pre-trial. Ms. Beto proceeded to trial against Dr. Stewart. She criticized two aspects of Dr. Stewart's care: (1) his use of the lithotomy or frog-leg position; and (2) the fact that he utilized no padding beyond that which is built into the operating table. The jury returned a verdict in favor of Ms. Beto in the amount of $714,000.00. Dr. Stewart petitioned this Court for review of the jury verdict. His petition was denied on March 13, 2002.

The collateral issue, discovery obstruction, which is the crux of this appeal, revolves around the failure to utilize additional padding during the surgical procedure. The operative report written by Dr. Stewart is silent as to whether lateral padding was used during surgery, and Dr. Stewart has never contended that additional padding was utilized. Shortly after the surgical procedure was performed, Dr. Stewart wrote two letters to his professional liability insurance carrier, The Doctors Company (TDC),[2] delineating the facts surrounding Ms. Beto's surgery because he believed the incident would result in litigation. On March 12, 1998, Dr. Stewart wrote, *inter alia*, "Padding was placed under the feet and ankle areas. No additional padding was placed or felt necessary as there were no pressure areas against the lateral aspects of the legs. The operating table had a standard operating table pad and no additional padding or special mattresses were placed." On March 20, 1998, Dr. Stewart explained that Ms. Beto was seeking a second opinion at the Cleveland Clinic and that she declined his advice to seek care at a pain clinic. The use of padding, or lack thereof, was not mentioned in this letter.

On March 29, 2000, Ms. Beto served on Dr. Stewart a "Notice of Videotaped Depositions and Production of Documents." Attached was a request for production of documents which asked the medical records custodian to provide:

Any and all documents or tangible items of whatever kind or nature which in any manner relate to the diagnosis or treatment provided to Plaintiff, Michele M. Beto, which is the subject of this Civil Action, including, but not limited to, any personal notes or diaries, memoranda, correspondence, medical records, or any other such items, INCLUDING ANY MEDICAL RECORDS OR OTHER DOCUMENTS RECEIVED FROM ANY HOSPITAL, CLINIC, PHYSICIAN, OR INDIVIDUAL, OR ANY OTHER SUCH ENTITY. This request is to be construed broadly to include any and all documents or tangible items that might in any way relate to this case involving Michele M. Beto, and the record custodian should err on the side of producing any documents as opposed to withholding any such documents or tangible items that might be considered not within the scope of this request.

Any privilege which might be asserted to prevent documents or tangible items from being discovered was to be made known at the April 4, 2000 deposition.

Neither Dr. Stewart nor his records custodian appeared for the deposition. A subsequent notice of deposition with production of documents was served on May 11, 2000; the deposition was rescheduled for May 19, 2000. In response, Dr. Stewart submitted to Ms. Beto an affidavit with documents attached. Because she could find no reference in these documents relating to whether lateral padding was used during her surgery, Ms. Beto requested that a telephone deposition of the records custodian, Kim Eplin, be conducted. During the deposition, Ms. Eplin failed to identify the two letters. Ms. Beto contends that Attorney Haddad was aware that the letters existed at the time the deposition of the records custodian was conducted, but he chose to remain silent. She believes that he

---

**2.** At the time the surgery on Ms. Beto was performed, Dr. Stewart was insured by TDC. In

December 1999, at the time the lawsuit was filed, Dr. Stewart was insured by PHICO.

intentionally chose not to correct or clarify Ms. Eplin's inaccurate testimony.

On June 16, 2000, during Dr. Stewart's deposition, the doctor acknowledged that he had summarized the circumstances surrounding Ms. Beto's surgery in letter form and had mailed the letters to his insurer. Ms. Beto later learned that on this same date, June 16, 2000, Attorney Haddad called Michelle Bennett, a claims representative for TDC, to ask if the insurance company had the letters and if copies could be sent to him. Ms. Bennett informed "Mr. Haddad that before these letters could be sent to him, we would need a letter from him explaining the circumstances and why he wanted them, along with a copy of the Complaint filed in this action." Ms. Beto contends that after Dr. Stewart and Attorney Haddad became aware that copies of the letters could be obtained, they denied having this knowledge. However, she admits that Dr. Stewart asserted the work product doctrine to protect the letters from discovery.

Ms. Beto claims that before the documents were finally produced, she sent six notices of deposition and production of documents to Dr. Stewart. The circuit court referred the matter of the letters to a discovery commissioner. The commissioner scheduled a hearing for October 24, 2000. After listening to counsels' arguments, the discovery commissioner declined to rule on the merits of the dispute. Instead of making a determination regarding whether the documents were protected by the work product privilege, the commissioner recommended that the letters be produced based on waiver of the claimed privilege. The commissioner's recommended order specifically states that the privilege was "waived on May 12, 2000 by Gregg Haddad's letter promising production of the Doctor's Company file to David Romano. Dr. Stewart had already testified that he had sent two letters to the Doctor's Company before the May 12, 2000 letter was written. Therefore, Attorney Haddad was aware that the letters would/should be in the file he agreed to produce." The circuit court entered the recommended order on November 6, 2000. However, the documents were not produced at that time because Dr. Stewart

filed a motion to hold the court's order in abeyance pending petition to this Court. Also, Dr. Stewart and TDC filed a motion to reconsider or, in the alternative, to make findings of fact and conclusions of law.

In the meantime, before the circuit court entered the discovery commissioner's recommended order, Ms. Beto moved for sanctions and a finding of contempt and discovery obstruction based upon her characterization of Dr. Stewart's delay in identifying and producing the letters. She also requested attorney fees and costs for the time expended in seeking production of the withheld documents. These motions were transferred to the discovery commissioner. In his recommended order, the commissioner found that Dr. Stewart did not obstruct the discovery process; deferred his ruling regarding whether Attorney Haddad obstructed the discovery process until the commissioner could be briefed by counsel; and deferred to the circuit court the ruling on discovery sanctions. The circuit court entered the recommended order on January 3, 2001.

The circuit court held its own hearing on the contempt and obstruction motions on January 23, 2001. By order entered on February 2, 2001, the court directed that the motion to hold Dr. Stewart in contempt be held in abeyance until the trial in this matter was completed; that the letters written from Dr. Stewart to his insurance company be furnished to Ms. Beto's counsel; and that Dr. Stewart pay Ms. Beto $5,197.50 as attorney's fees and costs for 34.65 hours of work expended seeking production of the letters. The letters were produced that day. In light of the approaching trial date of March 5, 2001, the parties agreed that the circuit court would retain jurisdiction over the matter of whether Attorney Haddad obstructed discovery. That particular issue would be resolved following completion of the trial.

On July 24, 2001, the circuit court ordered that all responsive documents to Ms. Beto's subpoenas be submitted to the court for *in camera* review. A hearing date was set for August 17, 2001; however, "[t]he Court reserve[d] the right, after reviewing the documents *in camera*, to make a determination with respect to the obstruction issue if the

Court believes that it can do so based on its current knowledge of the situation and the prior submissions to the Court on this issue as well as the *in camera* review." Following an extensive *in camera* review of all relevant documents, the circuit court determined that "an evidentiary hearing is unnecessary because the evidence presented and reviewed is sufficient for the Court to properly rule." The court subsequently found "that Attorney Haddad did not obstruct the discovery process." The court denied Ms. Beto's motion to hold Dr. Stewart in contempt by stating:

> In the present case, the Court finds that Attorney Haddad's conduct was deficient in the manner that Attorney Haddad conducted the initial interview with Dr. Stewart in January 2000; deficient in his review of the "Motion for Videotaped Deposition and Production of Documents" served by Attorney Romano on March 20, 2000; deficient in the overseeing of obtaining documents responsive to the request for production of documents; deficient in his preparation of witness Kathy Eplin, the medical records custodian; and deficient in his preparation of Dr. Stewart for the medical records deposition. However, the Court finds that these deficiencies and shortcomings were in Attorney Haddad's duty to his client and not his duties and obligations to the Court and its processes. Attorney Haddad did not obstruct the discovery process, fail to comply with a subpoena or court order nor violate any ethical obligation to the Court. As a result, the Court finds that his deficient conduct does not warrant sanctions because the plaintiff was not prejudiced by his actions, the correspondence between Dr. Stewart and TDC was produced prior to trial and utilized by the plaintiff at trial and there is no proof that Attorney Haddad intentionally concealed the existence of this correspondence.

It is from this order that Ms. Beto appeals. On August 30, 2002, Attorney Haddad sought leave of this Court to intervene in Ms. Beto's appeal as a real party in interest. This Court granted the motion.

## STANDARD OF REVIEW

The question we are asked to resolve in this case is whether the circuit court correctly concluded that Attorney Haddad did not intentionally conceal material evidence. After concluding the attorney did not obstruct discovery, the court necessarily found that no further sanctions were warranted beyond the $5,197.50 previously awarded to Ms. Beto as attorney's fees and costs. Ms. Beto asks that we reverse the circuit court's order and remand the case to allow her to present an affidavit showing that her attorney spent more than 200 hours of billable time seeking production of the documents. In the alternative, she requests that we reverse the circuit court's order and remand for an evidentiary hearing wherein all relevant documents, including those reviewed by the court *in camera*, will be discussed in open court. She also asks that we consider referring Attorney Haddad to disciplinary counsel for the West Virginia State Bar for appropriate proceedings.

This Court previously discussed the review of sanctions imposed by circuit courts by stating:

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syllabus Point 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). More specifically, West Virginia Rule of Civil Procedure 37(b) explicitly authorizes a circuit court to award attorney's fees as a sanction for the failure to obey a discovery order. The decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse. "[A] circuit court necessarily abuses its discretion if it bases its ruling on an erroneous assessment of the evidence or

an erroneous view of the law." *Cox v. State,* 194 W.Va. 210, 218 n. 3, 460 S.E.2d 25, 33 n. 3 (1995) (Cleckley, J., concurring).

## III.

## DISCUSSION

On appeal, Ms. Beto contends the circuit court erred by finding that the attempt to conceal material evidence did not warrant a finding of discovery abuse and obstruction of justice. She also contends the court erred by substituting an *in camera proceeding* for an evidentiary hearing on this issue. Dr. Stewart counters that the circuit court's ultimate disposition of this matter was entirely appropriate. Attorney Haddad points out that the contempt motion was filed before the motion to compel production of the letters was heard or adjudicated and before the circuit court ordered production of the letters. Thus, no order existed under which Dr. Stewart or Attorney Haddad could be held in contempt. Consequently, the circuit court correctly denied Ms. Beto's request for further relief.

■ Initially, we must determine whether the circuit court correctly determined that Attorney Haddad did not obstruct the discovery process. The disagreement among the parties boils down to each person's interpretation of how discovery was exchanged throughout the litigation. Ms. Beto insists that the attachment to her first notice of deposition with production of documents was so clear that Dr. Stewart and his attorney must have known that the letters should immediately be produced. She refers to the attachment which requested production of "any personal notes or diaries, memoranda, correspondence, medical records, or any other such items" that was included with each

notice of deposition. Even after they acknowledged the existence of the letters, Ms. Beto believes that both Dr. Stewart and his attorney *intentionally misrepresented* the accessibility of the letters. She believes this constituted an obstruction of discovery which violated West Virginia Rules of Professional Conduct 3.4 and 8.4.[3]

Ms. Beto argues that the circuit court could not possibly evaluate the demeanor and credibility of the witnesses regarding the issue of who failed to produce the documents without holding an evidentiary hearing in open court. She believes that her attorney was denied the opportunity to cross-examine the witnesses regarding the reasons the relevant documents were not timely produced. She interprets Dr. Stewart's deposition testimony to mean that he told his attorney in January 2000 that he had written the letters to TDC; yet, the letters were not produced until January 2001. She believes that the court's failure to hold a hearing amounts to an abuse of discretion.

Dr. Stewart maintains that from the beginning he admitted no additional padding was used during Ms. Beto's surgery. Even though his admission directly contradicted the testimony of a surgical nurse who testified that additional padding had been used, the operative report which he wrote makes no mention of additional padding. The letters which he wrote to his malpractice insurer simply confirm that no additional padding was utilized. The protracted dispute which ensued concerning the existence and discoverability of the letters was caused by a misunderstanding and confusion regarding the request. Dr. Stewart was under the impression that Ms. Beto was seeking medical rec-

---

**3.** West Virginia Rule of Professional Conduct 3.4 states in pertinent part:

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party[.]

West Virginia Rule of Professional Conduct 8.4 states in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

ords; he did not think her request included summaries he wrote to his insurance company. However, at the first document deposition, defense counsel quickly became aware that he had misjudged the scope of the document subpoena.

Once the letters were identified, Dr. Stewart asserted the work product privilege. Then, without the benefit of an order compelling discovery, Ms. Beto moved for sanctions and a finding of contempt and discovery obstruction. After Attorney Haddad received copies of the letters, Ms. Beto moved to compel production of the documents. The motion was referred to a discovery commissioner who avoided the privilege issue but recommended production on the basis of waiver. The documents were produced the day that the circuit court ordered production. Because he did not intentionally withhold the documents in violation of a court order and because Ms. Beto was not prejudiced by the timing of the disclosure, Dr. Stewart contends that the circuit court's resolution of this disagreement was entirely proper.

Attorney Haddad interjects that the initial correspondence from Ms. Beto's attorney seeking discovery was in letter form and requested Ms. Beto's original medical records; no mention was made of other types of records, such as personal notes, diaries, or memoranda. The letter indicated that no testimony would be taken, so a paralegal or other staff person could deliver the records or the records could be mailed. Without any explanation, sixteen days later Ms. Beto's attorney noticed a videotaped deposition and production of documents directed to Dr. Stewart's medical records custodian. This notice was internally inconsistent in that it specifically required an appearance by the medical records custodian but requested additional documents that would not fall within the domain of a medical records custodian.

Attorney Haddad readily admits that no one appeared or produced documents on behalf of Dr. Stewart on April 4, 2000. He states that the reason is unclear. However, he notes that the subpoena was incorrectly

noticed pursuant to West Virginia Rule of Civil Procedure 30(b)(7) rather that Rule 30(b)(6).[4] The subpoena also failed to comply with West Virginia Rule of Civil Procedure 34 which allows thirty days to file a written response or objection to the records sought. The notice arrived just four business days prior to the scheduled deposition. Ms. Beto's attorney spoke with Attorney Haddad by telephone on April 4, 2000; a renotice was served on May 11, 2000 which scheduled the deposition for May 19, 2000. The medical records custodian appeared for the deposition and produced Ms. Beto's medical records. Ms. Eplin testified that she had no knowledge of personal documents or correspondence between Dr. Stewart and his insurance carrier. Attorney Haddad recognized that this information could only be provided by Dr. Stewart and agreed that the doctor would testify concerning these matters. Dr. Stewart testified on June 16, 2000. At the time that Dr. Stewart testified concerning the letters, his attorney objected to their production on the basis of privilege.

Moreover, Dr. Stewart could not find his copy of the letters. By this time, Dr. Stewart had closed his Morgantown practice and was practicing for his brother in Charleston. His records were in boxes. So Attorney Haddad called TDC, who informed him that he would have to send a copy of the complaint and request copies in writing explaining why he needed them. Over the next three months, Ms. Beto served upon Dr. Stewart several notices of depositions seeking production of the documents. In the meantime, TDC retained Attorney Haddad's law firm to represent the insurance company. TDC located and faxed copies of the letters to Attorney Haddad's office on August 8, 2000. Attorney Haddad states that he was in trial at that time and did not see the letters until August 14, 2000. On September 5, 2000, he filed a formal objection on behalf of TDC to production of the letters claiming that they were prepared in anticipation of litigation and were covered by the attorney work product doctrine. The same objection

---

**4.** Rule 30(b)(7) relates to testimony, not production of documents, while 30(b)(6) relates to pro-

duction of documents at a deposition.

and assertion of privilege was filed on behalf of Dr. Stewart.

On September 6, 2000, Ms. Beto filed a motion to compel production of the documents. Before a hearing was held on the motion, she filed a motion to hold Dr. Stewart in contempt for obstructing discovery. After hearing arguments from both sides, the discovery commissioner recommended to the circuit court that the letters be produced based on waiver. The court ordered discovery and the documents were produced prior to trial.

We agree with the circuit court that this proceeding is governed by West Virginia Rule of Civil Procedure 37(b)(2). The Rule states in pertinent part:

> If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to supplement as provided for under Rule 26(e), or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just[.]

The Rule enumerates various sanctions which the court may impose for failure to obey an order and then provides that

> the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

This Court has said that "the purpose of Rule 11 and Rule 37 of the West Virginia Rules of Civil Procedure is to allow trial courts to sanction parties who do not meet minimum standards of conduct in a variety of circumstances.... [Moreover], a trial court has broad authority to enforce its orders and to sanction any party who fails to comply with its discovery rulings." *Bartles v. Hin-*

*kle,* 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996) (citations omitted).

The problem in the case *sub judice* does not seem to be so much that Dr. Stewart and Attorney Haddad disobeyed a discovery order but whether they unnecessarily caused the litigation to be prolonged by failing to earlier produce the documents. The record shows that the circuit court first ordered discovery of the letters on November 6, 2000. The court later determined that no objections were received due to a clerical error. Dr. Stewart objected. On January 3, 2001, the circuit court found that the doctor waived his right to assert the attorney-client privilege or the work product doctrine and affirmed the November 6, 2000 order. On January 9, 2001, Dr. Stewart and TDC filed a motion asking the circuit court to hold the order in abeyance pending petition to this Court. A hearing on the motion was scheduled for January 24, 2001. This motion was apparently never argued before the circuit court. During a hearing held on January 23, 2001, the court ordered that the letters be produced regardless of pending motions. The issue was ultimately settled on February 2, 2001 when the court memorialized its order in writing and awarded Ms. Beto $5,197.50 for "attorneys' fees and costs ... for prior discovery disputes[.]" Ms. Beto's motion to hold Dr. Stewart in contempt was held in abeyance until the trial was completed.

Following trial, the circuit court addressed the "Motion to Hold Defendant Stewart in Contempt for Obstructing Discovery and for Other Relief." Even though the motion sought to hold Dr. Stewart in contempt, the court determined that the issue was whether Attorney Haddad intentionally failed to disclose the existence of correspondence between the doctor and his insurer. In other words, the issue before the court was not whether Dr. Stewart should be held in contempt, but whether Dr. Stewart's defense counsel should be held in contempt. Following an extensive *in camera* review of various relevant documents, the circuit court determined that Attorney Haddad did not obstruct discovery.[5]

---

**5.** We find no merit in Ms. Beto's argument that the circuit court abused its discretion by failing

■ This Court previously provided guidance to circuit courts regarding the issue of sanctions by stating:

"In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case." Syl. pt. 2, *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996).

Syllabus Point 4, *Mills v. Davis*, 211 W.Va. 569, 567 S.E.2d 285 (2002). Given the genuine disagreement among the parties which we fully set forth above concerning the discoverability of the letters and the exhaustive review of the case conducted by the circuit court, we cannot say the court abused its discretion in failing to award additional attorney's fees.

The court's order is well reasoned. After finding that Attorney Haddad's conduct was deficient in many ways, the court explained that the deficiencies were not aimed at the court or its processes. The court also explained that the deficient conduct did not warrant additional sanctions because Ms. Beto was not prejudiced by Attorney Haddad's actions. No prejudice occurred because the letters were produced prior to trial and were used by Ms. Beto during trial. The court found no proof that Attorney Haddad intentionally concealed the existence of the correspondence. In determining that no additional sanctions were warranted, the court considered the seriousness of the conduct and the impact or lack thereof that the con-

duct had in the case. Because we find no erroneous assessment of the evidence or the law in this case, we cannot say the circuit court abused its discretion.

Based on the foregoing, the order of the circuit court is affirmed.

Affirmed.

McGRAW, Justice, dissenting.

(Filed July 2, 2003)

As indicated by the deposition testimony of Dr. Stewart, defense counsel had knowledge, as early as January of 2000, that Dr. Stewart had written to The Doctor's Company in regards to Ms. Beto's injury due to the lack of additional padding during the procedure. According to Dr. Stewart's sworn testimony, defense counsel knew of the documents' existence by May 19, 2000. However, defense counsel did not disclose that the documents existed until September 5, 2000. By not disclosing this information, defense counsel failed to comply with discovery requests for almost four months. Moreover, during the time that defense counsel did not disclose the documents, he led Ms. Beto to believe that they may have been destroyed. Then, after the fact, defense counsel attempted to assert the work product doctrine as the reason for withholding the documents. The record suggests that they knew they were doing something wrong, and they were trying to gloss over their actions.

An attorney should zealously advocate a client's position, but must do so in accordance with our Rules of Professional Conduct. While the attorney must represent the client, that representation should not rise to the level of covering up information. If an attorney does so, then he or she goes beyond the boundaries of advocacy. In addition, according to West Virginia Rule of Professional Conduct 3.4(d), [a] lawyer shall not . . . fail to make a reasonably diligent effort to comply with a legally proper discovery request by an

to hold an evidentiary hearing. She directs our attention to Syllabus Point 2 of *Bartles, supra,* and contends that the court could not properly " 'consider the seriousness of the conduct, [and] the impact the conduct had in the case and in the administration of justice' " without conducting a hearing. This syllabus point is quoted entirely

out of context. It has nothing to do with evidentiary hearings. The holding refers only to the formulation of appropriate sanctions. The circuit court obviously considered the seriousness of the conduct and the impact the conduct had in the case, and the court's order reflects as much.

opposing party...." By not complying with the discovery requests and failing to promptly provide the letters, defense counsel went beyond the boundaries of advocacy.

The majority misses the mark when indicating that there was no harm to Ms. Beto. "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice...." *Committee on Legal Ethics of the West Virginia State Bar v. Keenan* 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). Defense counsel's conduct is the very kind of conduct that gives rise the public view that lawyers are dishonest and leaves a black mark on our noble profession.

Because I believe that the actions of defense counsel were sanctionable, I must respectfully dissent.

STARCHER, C.J., dissenting.

(Filed July 10, 2003)

I dissent from the majority's opinion. The circuit court's decision to not sanction Attorney Haddad appears to have been based upon a secret, sealed affidavit reviewed by the circuit court in an *in camera* proceeding. The attorney for the plaintiff was thereby denied the opportunity to cross-examine Attorney Haddad, and possibly contradict his statement of the events surrounding the discovery of the letters written by Dr. Stewart.

I also dissent because the majority opinion downplays the importance of the letters, apparently accepting Dr. Stewart's contention that from the beginning he admitted that no lateral padding was used during Ms. Beto's surgery. However, this contention runs contrary to the fact that the plaintiff was forced to go to trial to prove that the absence of lateral padding breached the standard of care and caused the plaintiff's injury. The report of the operation, prepared by both the doctor and two operating room nurses, was silent about lateral padding. The letters were therefore the only contemporaneous documents that demonstrated that lateral padding had not been used.

The record shows that Attorney Haddad knew of the existence of the letters, but did nothing to comply with the plaintiff's discovery requests to make these letters available. The failure of Attorney Haddad to produce or identify the letters, and his continued misrepresentations about whether they even existed, impaired the plaintiff's case and imposed exceptional hardships upon her ability to fairly try her case.

The discovery process is intended to be a simple, fair, and hopefully truthful procedure. The majority opinion acquiesces to this goal, but I still respectfully dissent, and believe the circuit court should have allowed the plaintiff an opportunity to cross examine Attorney Haddad, and thereby establish the need for additional sanctions.