IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-0643

_____

FILED
**March 15, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MICHAEL D. HARLOW,
Plaintiff Below, Petitioner

v.

EASTERN ELECTRIC, LLC,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Nicholas County,
Business Court Division
The Honorable James H. Young, Jr., Presiding Judge
The Honorable Paul T. Farrell, Resolution Judge
Civil Action No. 17-C-149

AFFIRMED

_____

Submitted: January 12, 2021
Filed: March 15, 2021

M. Shane Harvey, Esq.                     John R. Hoblitzell, Esq.
Jackson Kelly, PLLC                       John D. Hoblitzell III, Esq.
Charleston, West Virginia                 Victoria L. Wilson, Esq.
Counsel for Petitioner                    Kay Casto & Chaney, PLLC
                                          Charleston, West Virginia
                                          Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

2.      "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally-Mike Prop. v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986).

3.      "As a general rule of statutory construction, the word 'may' inherently connotes discretion and should be read as conferring both permission and power. The Legislature's use of the word 'may' usually renders the referenced act discretionary, rather than mandatory, in nature." Syl. Pt. 1, *Pioneer Pipe, Inc. v. Swain*, 237 W. Va. 722, 791 S.E.2d 168 (2016).

4.      West Virginia Code § 31B-7-702(d) (1996) does not *require* a court to award attorney fees or expenses, rather, the decision is left to the discretion of the trial court.

i

5.      "The decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse."  *Beto v. Stewart*, 213 W. Va. 355, 359, 582 S.E.2d 802, 806 (2003).

**Armstead, Justice:**

Petitioner, Michael D. Harlow, was once one of three members of Respondent, Eastern Electric, LLC ("Eastern"). During such association, Eastern lost nearly $400,000 in a prevailing wage case. Following this loss, Mr. Harlow dissociated from Eastern, and Eastern tendered a timely offer to purchase his interest. Mr. Harlow rejected Eastern's offer, and when negotiations failed, Mr. Harlow sued Eastern to enforce his statutory right to receive "fair value" for his interest. W. Va. Code § 31B-7-701(a) (1996). After discovery, the parties agreed on the value of Mr. Harlow's interest, but the process of reaching settlement left each side convinced that the other had behaved in bad faith. Both sides moved to recover their reasonable attorney fees and expenses pursuant to W. Va. Code § 31B-7-702(d) (1996). After a bench trial, the circuit court denied both motions. Mr. Harlow filed this appeal.

Based on the record before us, the arguments of the parties, and the applicable law, we find that the circuit court acted within its discretion in denying Mr. Harlow's motion for attorney fees and expenses; therefore, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Eastern is a West Virginia limited liability company organized in 2000.[1] During relevant times, Eastern provided electrical contracting, electrical engineering, and safety monitoring services. As an electrician, Mr. Harlow focused on the electrical

---

[1] The record indicates that Eastern changed its name to "Eastern Group, LLC" on March 9, 2018.

1

contracting side of the business. The other members focused on engineering and safety monitoring.

In 2011, former employees sued Eastern, alleging that Eastern unlawfully failed to pay prevailing wage for work performed for the State of West Virginia (the "Prevailing Wage Case"). Eastern argued that it relied on representations from the West Virginia Department of Administration in making its decision regarding payment of minimum wage, but a jury found for the plaintiffs and awarded substantial damages in or about February or March 2017. After accounting for interest, payroll taxes, and attorney fees, Eastern valued the judgment at $389,474.

In March 2017, Mr. Harlow advised Eastern's other members, by letter from his attorney, that he wished to dissociate from Eastern as of April 14, 2017 (the "Dissociation Date"). The letter acknowledged the existence of "several factors that will make a payment for his share difficult at this time" and advised that Mr. Harlow was "willing to delay the valuation of his interest until the [Prevailing Wage Case] is resolved[.]" At the time, Eastern was considering whether to appeal its loss in the Prevailing Wage Case. It chose, instead, to file a claim against the Department of Administration in the West Virginia Court of Claims (the "Court of Claims Case").[2]

With the March 2017 letter, Mr. Harlow's counsel enclosed a proposed dissociation agreement, and counsel for the parties attempted to reach agreement on the

_____

[2] The West Virginia Court of Claims is now known as the "West Virginia Legislative Claims Commission." W. Va. Code § 14-2-4 (2017).

2

terms of his departure. These efforts failed, and on May 12, 2017, counsel for Eastern served Mr. Harlow's counsel with a timely purchase offer pursuant to W. Va. Code § 31B-7-701(b).[3] Eastern offered to purchase Mr. Harlow's interest for either $45,500 (paid in four equal installments) *or* one-third of the gross proceeds recovered from the Court of Claims Case. In support of Eastern's offer—and as required by the statute—Eastern's counsel enclosed: (a) an explanation of estimated valuation, (b) a "recast" balance sheet, (c) a "QuickBooks" balance sheet, and (d) a profit and loss statement.[4]

---

[3] Section 701 provides that

> [a] limited liability company must deliver a purchase offer to the dissociated member whose distributional interest is entitled to be purchased not later than thirty days after the date determined under subsection (a) of this section. The purchase offer must be accompanied by:
>
> (1) A statement of the company's assets and liabilities as of the date determined under subsection (a) of this section;
>
> (2) The latest available balance sheet and income statement, if any; and
>
> (3) An explanation of how the estimated amount of the payment was calculated.

W. Va. Code § 31B-7-701(b).

[4] According to the enclosed explanation of estimated valuation, the "recast" balance sheet showed the fair market value of assets and liabilities as of the Dissociation Date; the "QuickBooks" balance sheet, by contrast, showed original asset costs and accumulated depreciation. The profit and loss statement purported to show 2017 business results up to the Dissociation Date.

Mr. Harlow rejected Eastern's offer, arguing that it undervalued the company's assets and that he was entitled to a share of any net recovery in the Court of Claims Case. He denied, however, that he had any responsibility to reimburse Eastern if the amount recovered in the Court of Claims Case was less than the cost of pursuing the claim. Litigation costs, he argued, were a company expense that he had funded through his efforts as a member. He further contended that his wife, attorney Martha Harlow, had "devoted substantial time during the [Prevailing Wage Case] to the Company's affairs" without compensation. He felt "sure that his contributions to the Company, and the contributions of his spouse, during the litigation" were greater than his share of any potential loss Eastern might suffer in the Court of Claims Case.

In October 2017, Mr. Harlow advised Eastern that he had retained an expert to value his interest and approximately one month later the parties entered into an agreement to toll Mr. Harlow's statutory deadline to sue.[5] The tolling agreement, which purported to extend the deadline to February 2018, also required Eastern to cooperate with the expert's information requests "in good faith" and within five business days.

Mr. Harlow's expert issued his first information request in October 2017, before the tolling agreement was signed. A supplemental request was issued in November 2017. Eastern responded to the first request in December 2017, but response to the

---

[5] *See* W. Va. Code § 31B-7-701(d) ("If an agreement to purchase the distributional interest is not made within one hundred twenty days after the date determined under subsection (a) of this section [i.e., the Dissociation Date], the dissociated member, within another one hundred twenty days, may commence a proceeding against the limited liability company to enforce the purchase.").

supplemental request was delayed until February 2018, largely, it seems, due to a change in representation.[6]

Meanwhile, Mr. Harlow sued Eastern in the Circuit Court of Nicholas County in December 2017. Mr. Harlow refrained from serving Eastern, however, until February 2018, when Eastern's new counsel agreed to accept service. Eastern answered the complaint, and the case was referred to the Business Court Division.[7] A scheduling order was issued in May 2018. According to the scheduling order, Mr. Harlow was to provide "all discovery concerning the fair market value of the distributional interest including all expert opinions" in August 2018; Eastern's discovery and expert opinions were due in November 2018.

Mr. Harlow served his first formal discovery requests in June 2018, and subsequent discussion between counsel revealed a key point of contention between the parties: whether Eastern had fully disclosed its accounts receivable as of the Dissociation Date. Mr. Harlow believed that Eastern had not, and in July 2018, he served three of Eastern's customers with subpoenas.

Eastern moved to quash the subpoenas, but one customer responded before Eastern filed its motion. This customer disclosed a $95,152 invoice from Eastern dated April 18, 2017. The invoice—which was signed four days after the Dissociation Date—

---

[6] In December 2017, Eastern's counsel was confirmed as the United States Attorney for the Southern District of West Virginia. In or about February 2018, Eastern's representation shifted to the law firm that represents Eastern in this appeal.

[7] See W. Va. Tr. Ct. R. 29.06 [2014].

certified that the amount due was for completed work, yet it also indicated that it was for the period ending on April 30, 2017. Mr. Harlow's valuation expert assumed that the entire amount of the invoice was for work performed before the Dissociation Date and, after making further estimated adjustments for other customers, increased Eastern's accounts receivable, as of the Dissociation Date, by $137,428. Based on these and other adjustments, Mr. Harlow's August 2018 expert report valued his one-third interest at $120,000.[8]

In September 2018, after serving Eastern with his expert opinion, Mr. Harlow's attorney sent Eastern's attorney a long letter objecting to Eastern's discovery responses.[9] However, later that month, when the circuit court heard Eastern's motion to quash, the circuit court objected to Mr. Harlow's decision to issue his expert report before completing discovery. According to the court, "[i]f the Plaintiff needed the subpoenaed information so much, then Plaintiff should have sought relief from the Scheduling Order[.]" Nevertheless, the parties were able to stipulate that documents relating to work performed up to the Dissociation Date would be produced under the subpoenas. Certain

---

[8] This amount was "exclusive of" any recovery in the Court of Claims Case, which the expert considered speculative and "not without risk."

[9] Eastern served its first discovery response in July 2018 and supplemented its response in August 2018.

other requested information, however, was deemed "not relevant[,]" and Mr. Harlow's subpoenas were quashed to the extent they sought such information.[10]

Eastern supplemented its discovery responses a second time in October 2018, providing payroll summaries, timesheets, and other documents for the period immediately prior to the Dissociation Date. In November 2018, Eastern's expert completed his valuation report, which valued Mr. Harlow's one-third interest at $69,814.[11] Eastern's expert explained that this lower value was due, in part, to different conclusions about Eastern's accounts receivable and to the opposing expert's failure to account for accrued expenses.

After changing attorneys, Mr. Harlow renewed his discovery efforts in December 2018, filing a motion to compel discovery and serving a new round of subpoenas. He also sought to add three new parties.[12] Eastern opposed these efforts and further supplemented its discovery responses. Following a hearing in February 2019, the circuit court quashed the subpoenas and denied Mr. Harlow's request to add new parties. The circuit court did, however, grant a portion of the motion to compel discovery, ordering

---

[10] Documents produced before Eastern filed the motion to quash were to be subject to a separate agreed protective order.

[11] This figure does not account for any potential recovery from the Court of Claims Case, which the expert considered "a contingent asset and . . . not capable of prediction."

[12] Mr. Harlow proposed to name as defendants the two remaining members of Eastern and a closely related limited liability company.

Eastern to permit Mr. Harlow, his attorney, and his expert to inspect Eastern's records for two prominent customers.

During the February 2019 hearing, the circuit court advised that Mrs. Harlow could not attend the records inspection unless she filed a notice of appearance as counsel for her husband. Mrs. Harlow subsequently filed a notice of appearance in March 2019, and Eastern moved to disqualify and enjoin her from providing assistance to Mr. Harlow or his attorney based on her work for Eastern during the Prevailing Wage Case.[13] In response to the motion, Mrs. Harlow filed a lengthy declaration describing the extent of her involvement in both cases. After a hearing, the circuit court found a conflict of interest and disqualified Mrs. Harlow from appearing as counsel in the matter, noting Mr. Harlow's proposal to use the value of Mrs. Harlow's work on the Prevailing Wage Case as a "possible offset" against losses in the Court of Claims Case.[14] The court did not, however, enjoin Mrs. Harlow from consulting with Mr. Harlow or his attorney.

In April 2019, the parties' experts submitted revised reports that narrowed the gap between the parties' positions. Eastern's expert valued Mr. Harlow's one-third interest at $79,209; Mr. Harlow's expert valued it at $100,000.[15]

---

[13] Eastern filed the motion to disqualify in March 2019 the same day as and, indeed, before Mrs. Harlow filed her notice of appearance.

[14] In April 2019, Mr. Harlow moved for relief from Mrs. Harlow's disqualification after Mr. and Mrs. Harlow signed a release of any claim for compensation for the "legal support" she provided to Eastern during the Prevailing Wage Case. This motion was later withdrawn.

[15] Neither expert assigned a value to the Court of Claims Case.

The parties agreed to value Mr. Harlow's interest at $100,000 plus a third of any net proceeds from the Court of Claims Case. Nevertheless, both sides sought to recover their attorney fees and expenses and filed motions to that end. In his motion, Mr. Harlow invoked W. Va. Code § 31B-7-702(d) (authorizing a statutory award of attorney fees and expenses when a party "acted arbitrarily, vexatiously or not in good faith") and Syllabus Point 3 of *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986) (authorizing an equitable award of attorney fees when a party "acted in bad faith, vexatiously, wantonly or for oppressive reasons"). He accused Eastern of bad faith[16] due to Eastern's alleged (a) concealment of accounts receivable, (b) failure to produce documents,[17] (c) tender of a deficient purchase offer, and (d) efforts to disqualify Mrs. Harlow.[18] Mr. Harlow did not, however, separately accuse Eastern of acting arbitrarily. Rather, he contended that "clear and convincing evidence [supported] a finding that [Eastern] ha[d] acted 'arbitrarily, vexatiously, *or* not in good faith' for purposes of" the statute "and/or" *Sally-Mike Properties*. (Emphasis added.)

---

[16] Mr. Harlow also accused Eastern of vexatious attacks on Mrs. Harlow, but the overall thrust of his argument was that Eastern acted in bad faith.

[17] Mr. Harlow argued that Eastern failed to provide company records pursuant to W. Va. Code § 31B-4-408(a) (1996) (requiring limited liability companies to "provide former members and their agents and attorneys access for proper purposes to records pertaining to the period during which they were members.").

[18] Eastern's counsel also referred Mrs. Harlow to the Office of Disciplinary Counsel. Mr. Harlow argued that this was further evidence of bad faith.

In May 2019, the parties appeared for a one-day bench trial on their respective motions for attorney fees and expenses. Witnesses included Eastern's business manager and two attorneys.[19] The business manager described Eastern's circumstances in the spring of 2017 and explained Eastern's discovery responses. The attorney witnesses, who formerly represented the opposing parties during discovery,[20] testified about their activities and interactions. In all, the circuit court received fifty-two exhibits as evidence, thirty of which came from Mr. Harlow.

After trial, the parties submitted proposed findings of fact and conclusions of law. Mr. Harlow's proposed order contained an extensive summary of the evidence and provided what he considered to be the relevant law, including definitions for "clear and convincing evidence," "bad faith," and "vexatious." He then presented his proposed conclusions of law: (a) that Eastern's May 2017 purchase offer was statutorily inadequate[21] and made in bad faith; (b) that Eastern concealed accounts receivable in bad faith and arbitrarily failed to engage in efforts to resolve the parties' dispute; (c) that Eastern withheld and delayed production of records in bad faith; (d) that Eastern engaged

---

[19] Mr. Harlow's valuation expert was the fourth witness.

[20] As noted above, Eastern's first attorney left the case in December 2017 when he became the United States Attorney for the Southern District of West Virginia. Eastern's second attorney, who testified as a witness for Eastern, entered the case in or about February 2018 and remained in the case until in or about December 2018. Mr. Harlow's first attorney of record, who testified for Mr. Harlow, remained with him until in or about November 2018.

[21] Mr. Harlow asserted that Eastern's offer violated the statute because it failed to offer "fair value." *See* W. Va. Code § 31B-7-701(a).

in "late stage" attacks on Mrs. Harlow and other vexatious conduct[22] that contribute to a finding of bad faith; and (e) that the foregoing activities "met *one or more* of [the] 'arbitrary, vexatious, and not in good faith' standards" under the statute[23] and "bad faith" under *Sally-Mike Properties*.  (Emphasis added.)

The circuit court rejected both parties' motions by order entered on June 19, 2019.  Mr. Harlow appeals from that order.

## II.  STANDARD OF REVIEW

In this appeal, we review a circuit court order that was entered following a bench trial.  Thus, we apply the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied.  The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).   With this standard of review in mind, we will consider Mr. Harlow's assignments of error.

---

[22] This other allegedly vexatious conduct was proposing a three-year, one-hundred-fifty-mile noncompetition clause when Mr. Harlow sought to dissociate and failing to provide timely responses under the tolling agreement.

[23] While not an exact quote, this language approximates the statute's reference to a party who acts "arbitrarily, vexatiously or not in good faith[.]"  *See* W. Va. Code § 31B-7-702(d).

## III.  ANALYSIS

In this appeal, Mr. Harlow raises five assignments of error.  He contends that the circuit court erred: (1) by failing to apply the statutory standard for awarding attorney fees and expenses, (2) by failing to determine that Eastern behaved "vexatiously or not in good faith" for purposes of the statutory standard, (3) by disqualifying Mrs. Harlow from appearing as counsel on his behalf,[24] (4) by failing to determine that Eastern behaved "arbitrarily" for purposes of the statutory standard, and (5) by applying a clear and convincing standard of evidence to his statutory claim for attorney fees and expenses.[25]

### A.  Dissociation Under the Uniform Limited Liability Company Act

This appeal stems from Mr. Harlow's decision to dissociate from Eastern pursuant to section 6-601(1) of the Uniform Limited Liability Company Act (the "Act").[26] The Act requires an at-will[27] limited liability company to purchase a member's

---

[24] Mr. Harlow also claims that the circuit court erred by failing to award him the attorney fees and expenses he incurred to defend against Eastern's motion to disqualify Mrs. Harlow.

[25] We have reordered Mr. Harlow's assignments of error to accord with our analysis.

[26] The Uniform Limited Liability Company Act is codified in Chapter 31B of the West Virginia Code.  *See* W. Va. Code §§ 31B-1-101 to -13-1306.  Section 6-601 authorizes a member to dissociate from a limited liability company by giving "notice of the member's express will to withdraw upon the date of notice or on a later date specified by the member[.]"  W. Va. Code § 31B-6-601(1) (1996).

[27] An at-will limited liability company is a limited liability company whose "members have [not] agreed to remain members until the expiration of a term specified in the articles of organization."  W. Va. Code § 31B-1-101(2) and (22) (2003).

distributional interest for its "fair value" when the member dissociates from the company and the company remains a going concern. W. Va. Code § 31B-7-701(a)(1). "Fair value" is to be "determined as of the date of the member's dissociation[.]" *Id.*

The Act anticipates that the company and the dissociating member will seek to negotiate a purchase price for the member's interest, *see* W. Va. Code § 31B-7-701(d), and it commands the company to take the first step. Section 7-701(b) requires the company to "deliver a purchase offer[28] to the dissociated member . . . not later than thirty days after the date" of dissociation. The Act further requires this offer to "be accompanied by: (1) [a] statement of the company's assets and liabilities as of the [dissociation] date . . . ; (2) [t]he latest available balance sheet and income statement, if any; and (3) [a]n explanation of how the estimated amount of the payment was calculated." *Id.* (line breaks removed). If negotiations fail, the Act provides a cause of action, W. Va. Code § 31B-7-701(d), and directs the court to "determine the fair value of the distributional interest . . . together with the terms for the purchase[,]" W. Va. Code § 31B-7-701(e); *see also* W. Va. Code § 31B-

---

[28] Because a limited liability company has an ultimate duty to pay "fair value," W. Va. Code § 31B-7-701(a)(1), Mr. Harlow reasons that the company is required to offer "fair value" in the purchase offer, W. Va. Code § 31B-7-701(b). However, no such requirement appears in subsection (b), and we note that "fair value" is inherently vague. The structure of section 7-701 suggests that the Legislature intended the parties to reach "fair value" through negotiation.

13

7-702(a). Lawful terms of purchase include installment payments and covenants not to compete.[29] W. Va. Code § 31B-7-702(a)(2).

## B. Statutory Authority to Award Attorney Fees and Expenses

The Act provides express authority to "award one or more . . . parties their reasonable expenses, including attorney's fees and the expenses of appraisers or other experts," whenever a "court finds that a party to the proceeding acted arbitrarily, vexatiously or not in good faith[.]" W. Va. Code § 31B-7-702(d). A company that neglects to make a purchase offer, or otherwise fails to comply with section 7-701(b), risks a finding that it has engaged in arbitrary, vexatious, or bad faith conduct. W. Va. Code § 31B-7-702(d).

## C. Whether the Circuit Court Applied the Statutory Standard

Mr. Harlow contends that the circuit court failed to apply section 7-702(d) when it ruled on his motion for attorney fees and expenses. Instead, he claims, "the circuit court focused solely on whether Mr. Harlow was entitled to fees *in equity*, which requires a 'clear and convincing' showing that a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." We disagree.

According to the circuit court's order, the "sole issue" at trial was "whether either party acted arbitrarily, vexatiously, or not in good faith so that the [c]ourt would

---

[29] Because a circuit court has discretion to impose a covenant not to compete on a dissociating member "if appropriate," we attach no significance to Eastern's counterproposal to subject Mr. Harlow to a covenant not to compete in the dissociation agreement. W. Va. Code § 31B-7-702(a)(2). If the terms of the proposed covenant not to compete were unduly "onerous," Mr. Harlow was free to reject them.

award attorney fees and expenses *as authorized under W.Va. Code § 31B-7-702.*" (Emphasis added.) The circuit court expressly found that Eastern "complied" with 7-701(b) "by delivering a purchase offer and the mandated accompanying information to the dissociated member within thirty (30) days." Later, the circuit court quoted section 7-702(d) in its entirety, including the portion that authorizes a finding of arbitrary, vexatious, or bad faith conduct "based on the company's failure to make an offer to pay or to comply with section 7-701(b)." W. Va. Code § 31B-7-702(d). Finally, the circuit court expressly determined that "neither party is entitled to and shall not recover reasonable costs in this matter *pursuant to W.Va. Code § 31B-7-701(d)*[.]" (Emphasis added.)

It is true that the circuit court also considered whether attorney fees should be awarded pursuant to its equitable authority, noting our holding that "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally-Mike Prop.*, 179 W. Va. 48, 365 S.E.2d 246. However, this should come as no surprise to Mr. Harlow, because he quoted the same passage from *Sally-Mike Properties* in his proposed order; indeed, he asked the circuit court to find that he was entitled to relief on both statutory and equitable grounds.

Under the circumstances, we find no error in the circuit court's decision to reference both standards, because they largely overlap. The statute authorizes fees when a party has "acted arbitrarily, vexatiously or not in good faith[.]" W. Va. Code § 31B-7-

15

702(d). Equity authorizes fees when the "party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally-Mike Prop.*, 179 W. Va. 48, 365 S.E.2d 246. In other words, both standards authorize an award of fees for bad faith[30] or vexatious behavior, which is the conduct Mr. Harlow attributes to Eastern.

## D. Whether Eastern Behaved Vexatiously or Not in Good Faith

The question then becomes whether the circuit court erred by failing to determine that Eastern behaved "vexatiously or not in good faith" for purposes of the statutory standard. W. Va. Code § 31B-7-702(d). Mr. Harlow contends that it did. According to him, the evidence below demonstrated that Eastern failed to negotiate in good faith and that Eastern resisted his efforts to obtain accurate information about its accounts receivable.[31]

However, the circuit court found otherwise and memorialized its findings in a detailed and well-reasoned order. After hearing and observing the witnesses during hours of testimony, and reviewing the parties' exhibits, the circuit court rejected Mr. Harlow's claim that Eastern negotiated in bad faith.[32] According to the circuit court, losing the Prevailing Wage Case left Eastern "uncertain as to whether it could even continue business

---

[30] We find no discernible difference between acting "in *bad* faith" and acting "*not in good* faith."

[31] Mr. Harlow also attributes bad faith to Eastern's efforts to disqualify Mrs. Harlow. For reasons explained below, we decline to address this argument.

[32] The circuit court also had the benefit of hearing and ruling on the parties' discovery disputes during months of litigation.

operations"; nevertheless, it "continued to negotiate with [Mr. Harlow] by making reasonable offers in light of the financial standing of Eastern."

The circuit court also rejected Mr. Harlow's claim that Eastern concealed its accounts receivable. Though the circuit court agreed "that the initial financial statements did not correctly reflect accounts receivable," the circuit court accepted Eastern's explanation for that error, finding that it was "largely due to Eastern's standard accounting practices that omitted work-in-progress that was not yet billed" and that "this was Eastern's standard practice" before the Dissociation Date. This was, the circuit court acknowledged, "perhaps not the best accounting practice[.]" Yet the circuit court refused to say that it amounted to "vexatious conduct" because there was "no evidence . . . that the books were 'cooked' in order to present a lower figure[.]"

As for Mr. Harlow's claim that Eastern withheld documents that he was entitled to as a former member of the company pursuant to W. Va. Code § 31B-4-408 (1996), the circuit court found that he "made no formal request" to inspect Eastern's records until January 2019. Indeed, the court found "no clear evidence" that Mr. Harlow ever attempted to review Eastern's records and was turned away. On the contrary, when the matter of an inspection came up in January 2019, the circuit court ordered Eastern to make certain documents available for inspection, and the court found that the inspection occurred in accordance with its order. Ultimately, the circuit court found that "both parties substantially complied with statutory requirements and the West Virginia Rules of Civil

17

Procedure regarding discovery" and that "no complained of delay in the production of documents r[ose] to the level of bad faith."

These findings of fact are entitled to substantial deference. As we have said on several occasions,

> [f]ollowing a bench trial, the circuit court's findings, based on oral or documentary evidence, shall not be overturned unless clearly erroneous, and due regard shall be given to the opportunity of the circuit judge to evaluate the credibility of the witnesses. *W. Va. R. Civ. P[.]* 52(a). Under this standard, if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it, even though convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. We will disturb only those factual findings that strike us wrong with the "force of a five-week-old, unrefrigerated dead fish." *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir. 1993), cert. denied, 514 U.S. 1010, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995).

*Carr v. Veach*, ___ W. Va. ___, ___, 851 S.E.2d 519, 524 (2020) (quoting *Brown v. Gobble*, 196 W.Va. 559, 563, 474 S.E.2d 489, 493 (1996)); *see also Harrell v. Cain*, 242 W. Va. 194, 202, 832 S.E.2d 120, 128 (2019); *Eccles Cmty. Church & Trs. v. Bolon*, No. 15-0522, 2016 WL 3250095, at *3 (W. Va. June 6, 2016) (memorandum decision). This deference poses a high burden for Mr. Harlow to overcome, and we cannot say that he has succeeded. Based on our review of the record, we find that the circuit court's findings are certainly plausible, and we refuse to overturn them.

*More importantly*, we find no abuse of discretion in the circuit court's refusal to award attorney fees and expenses to Mr. Harlow. Section 7-702(d) establishes the circumstances when a court "*may* award" fees and expenses, not when it must award them.

18

(Emphasis added). "As a general rule of statutory construction, the word 'may' inherently connotes discretion and should be read as conferring both permission and power. The Legislature's use of the word 'may' usually renders the referenced act discretionary, rather than mandatory, in nature." Syl. Pt. 1, *Pioneer Pipe, Inc. v. Swain*, 237 W. Va. 722, 791 S.E.2d 168 (2016). Thus, as a matter of statutory construction, we hold that West Virginia Code § 31B-7-702(d) (1996) does not *require* a court to award attorney fees or expenses, rather, the decision is left to the discretion of the trial court.

We also accord substantial deference to a circuit court's decision about whether to award attorney fees. We have emphasized, and we now hold, that "[t]he decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse." *Beto v. Stewart*, 213 W. Va. 355, 359, 582 S.E.2d 802, 806 (2003). Thus, even if we were inclined to reverse the circuit court's findings of fact regarding Eastern's alleged bad faith or vexatious conduct—and we are not—we would still afford substantial respect to the circuit court's statutory discretion to refuse an award of fees. On the facts of this case—and given the special deference we accord to a circuit court's findings of fact after a bench trial—we find no abuse of discretion, and we refuse to overturn the circuit court's thorough and well-reasoned order.[33]

---

[33] For the same reasons, we need not determine whether the circuit court erred by disqualifying Mrs. Harlow from appearing as Mr. Harlow's counsel. What Mr. Harlow actually seeks is a discretionary award of attorney fees and expenses due to Eastern's
(continued . . .)

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's June 19, 2019 order refusing to award Mr. Harlow his attorney fees and expenses.

Affirmed.

---

allegedly bad faith or vexatious decision to challenge Mrs. Harlow's participation in the case. We find no abuse of discretion in the circuit court's refusal to award attorney fees or expenses on this basis.

Furthermore, we decline to consider Mr. Harlow's fourth and fifth assignments of error, because he failed to preserve them. According to Mr. Harlow's fourth assignment of error, the circuit court erred because it failed to determine that Eastern's May 2017 purchase offer was "arbitrary." Based on our review of the record in this matter, we conclude that Mr. Harlow never asked the circuit court to find that Eastern's initial purchase offer was "arbitrary." "Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered." *Barney v. Auvil*, 195 W. Va. 733, 741, 466 S.E.2d 801, 809 (1995) (per curiam). Indeed, if Mr. Harlow wanted the circuit court to find that the May 2017 purchase offer was "arbitrary," he could have included that finding in his proposed order. Instead, his proposed order found merely an "arbitrary" "lack of care [in Eastern's reporting of its accounts receivable] and failure to engage in resolving the subject dissociation matter[.]" Because Mr. Harlow failed to raise this issue below, it is too late for him to do so now.

Likewise, we refuse to consider his fifth assignment of error, which accuses the circuit court of erroneously applying a clear and convincing standard of evidence to his statutory claim for attorney fees and expenses. Mr. Harlow never attempted to persuade the circuit court that a lesser standard of proof applies to such claims. In fact, in his amended motion for summary judgment, he argued that Eastern's "actions support *by clear and convincing evidence* a finding that [Eastern] has acted *'arbitrarily, vexatiously, or not in good faith' for purposes of Section 31B-7-702(d)* and/or the *Sally-Mike Prop*[*erties*] bad faith exception to attorney fees." (Emphasis added). Thus, because Mr. Harlow failed to properly raise this issue below, it will not be considered on appeal.

20